[No. A127287. First Dist., Div. Five. June 27, 2011.]

CHERYL WALLACE et al., Plaintiffs and Respondents, v.
LOIS McCUBBIN et al., Defendants and Appellants.

COUNSEL

Zacks & Utrecht, Paul F. Utrecht and James B. Kraus for Defendants and Appellants.

The Rouda Law Firm and David Rouda for Plaintiffs and Respondents.

OPINION

**NEEDHAM, J.**—Lois McCubbin and Joshua Merck appeal. from an order denying their special motion to strike two causes of action from respondents'

complaint under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16.)[1] They contend that the acts on which the causes of action are based constitute activity protected by the statute, and the court erred in ruling that those acts were merely incidental to the causes of action. We agree, confirming that the first prong of analysis under the anti-SLAPP statute focuses on the acts on which liability is based, not the gestalt of the cause of action as respondents urge. McCubbin and Merck further contend that respondents did not demonstrate a probability of prevailing on the merits based on the alleged protected activity. Harmonizing and applying recent precedent, we agree on this point as well and conclude that the motion to strike should have been granted.

## I. FACTS AND PROCEDURAL HISTORY

We begin with the facts, as alleged by respondents in their complaint.

### A. *Background*

Victor Wu is the owner of a four-unit apartment building at 369–375 7th Avenue in San Francisco. The building is managed by Victor Wu and his brother, Lawrence Wu. The property is allegedly subject to provisions of the San Francisco Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance).

Appellants and respondents were tenants in the building, living in apartments across the hall from each other. Appellants McCubbin and Merck occupied 373 7th Avenue. Respondents Cheryl Wallace and John Owen moved into 375 7th Avenue in January 2004.

Around the time Wallace and Owen signed their lease in late 2003, Wallace obtained a dog named Nemo "under the prescription of her psychiatrist." Nemo is a "mixed breed dog certified trained by the San Francisco SPCA."

In January 2005 (or 2004), Wallace's psychiatrist informed landlord Victor Wu and the building manager, Campbell Peters, that Wallace was disabled and required a service dog, and that a landlord must allow a tenant to keep a service dog even if pets are otherwise prohibited.

In the first half of 2006, "Defendants and each of them"—allegedly including Victor Wu, Lawrence Wu, and also tenants McCubbin and Merck—

---

[1] All further undesignated statutory references are to the Code of Civil Procedure unless otherwise indicated.

threatened to evict two other tenants in the building for having dogs. They also demanded a third tenant remove a dog, after which the dog disappeared without its owner knowing the dog's whereabouts.

In March 2006, Wallace complained to Merck and McCubbin about Merck's smoking on the enclosed balcony that was shared by the two apartments. Later that month and the next month, Merck telephoned the Wus weekly to complain about Nemo's purportedly aggressive behavior. In mid-2006, McCubbin and Merck started an argument with Wallace about Nemo being "overly friendly" and "noisy."

The complaint alleged on information and belief that in the first half of 2007 McCubbin and Merck continued their "campaign of complaining falsely about Nemo's behavior" to Victor Wu. Lawrence Wu threatened Wallace and Owen that "Defendants" would eventually have Nemo removed.

Around June 2007, Wallace complained to the San Francisco Human Rights Commission about "Defendants'" threats to remove Nemo. After an investigation, the commission's fair housing and public accommodations compliance officer warned Victor Wu that, due to the nature of Wallace's disability, she required the accommodation of a "service/comfort" dog. The compliance officer informed "Defendants" that he found Nemo to be " 'docile, friendly and well socialized.' "

Around September 2007, Victor Wu and "another man" "forcefully interrogated" Wallace as to the nature of her disability and her need for a service dog. Victor Wu told Wallace that her service dog designation was invalid and that she and Owen would be evicted if they did not get rid of Nemo. In the same month, Wallace's psychiatrist wrote a letter to San Francisco Animal Care and Control (Animal Control) asserting that Wallace required a service animal for health reasons. Victor Wu telephoned the psychiatrist in October 2007 and claimed there was no basis for prescribing a service dog for Wallace; the psychiatrist replied that Wallace was disabled.

In October 2007, McCubbin informed Lawrence Wu in writing that Wallace and Owen were advertising for a new subtenant. Wallace and Owen's lease states that three adults may reside at the premises, and from the inception of the lease they had had three persons—themselves and a subtenant—occupying the apartment. Later in October, Victor Wu and an "assistant" intimidated the new subtenant, Reno Ybarra, into removing his belongings from the apartment and canceling his sublease.

Also in October 2007, McCubbin and Merck filed a complaint with Animal Control, reporting that Nemo, "incorrectly referred to as an X-large Great

Dane," was a "vicious and dangerous" dog. In late October 2007, Animal Control notified Wallace that there would be a hearing to determine whether Nemo should be killed. Wallace and Owen believe that Nemo has never damaged the apartment unit, growled, barked at, bitten, or attacked anyone.

In November 2007, Wallace complained to the San Francisco Human Rights Commission about McCubbin and Merck. On November 14, 2007, the San Francisco Human Rights Commission fair housing and public accommodations compliance officer wrote to McCubbin and Merck, stating that he had spoken with Victor Wu concerning the complaint and the Animal Control hearing, and that Nemo was not an " 'X-Large Great Dane' " or vicious and dangerous, but was " 'in fact a laid back docile if not lazy dog' " who " 'likes getting petted.' " The officer stated that he was "appalled by this egregious mischaracterization of this harmless dog," he intended to appear at the hearing to testify on Nemo's behalf, he was "greatly disturbed that anyone would go so far as to deny or obstruct Ms. Wallace's right as a disabled person to have a service dog as a reasonable accommodation," and the law "very clearly affirms Ms. Wallace's right to have Nemo."

In December 2007, a veterinarian examined Nemo and concluded that he did not appear to be aggressive, vicious, or dominant. Animal Control also found that Nemo was not vicious or dangerous.

In February 2008, Wallace sent a letter to Victor Wu stating her intention to replace the previous subtenant (Ybarra) with another individual, noting to "Defendants" that the lease expressly prohibits unreasonable refusal of a new subtenant. Victor Wu denied the request and threatened legal action if Wallace and Owen sublet the apartment. Wallace wrote another letter to Victor Wu, reminding him that the lease permitted three adult residents. She also provided information concerning the prospective subtenant. Lawrence Wu warned Wallace and Owen in writing that subletting would result in legal action.

In March 2008, Victor Wu served Wallace and Owen with a three-day notice to quit the premises. The eviction notice stated that eviction would be sought on the ground that having a third adult reside in the apartment breached the lease.

Wallace and Owen did not comply with the three-day notice. Victor Wu filed a complaint for unlawful detainer on April 2, 2008, alleging that subletting to the prospective sublessee would violate the lease agreement because the lease explicitly states the apartment would be used as a residence with no more than two adults.

At the unlawful detainer trial, Victor Wu allegedly admitted that he had lied to the presiding judge during discovery hearings regarding the location of

his former property manager, Campbell Peters, and that he had assisted Peters in evading service and refusing to appear for a deposition. At trial, Wallace and Owen allegedly produced "expert testimony and documentation demonstrating that the lease signed by Plaintiffs and Defendant's agent Campbell Peters in December 2003 allowed three occupants because Mr. Peters had changed the occupants from two to three." During jury selection, Victor Wu dismissed the unlawful detainer action.[2]

## B. *Complaint*

The allegations summarized *ante* were contained in a verified complaint that Wallace and Owen filed in May 2009 against Victor Wu, Lawrence Wu, McCubbin, and Merck. Paragraph 51 of the complaint further alleges: "The foregoing conduct was part of a systematic campaign of harassment and intimidation against disabled tenants with limited means, designed to force Plaintiffs from their home of four years. Plaintiffs are informed and believe and on that basis allege that Defendants engaged in such conduct to discriminate against Plaintiffs on the basis of their [*sic*] disabilities because of the special protections such persons are afforded by the San Francisco Rent Ordinance and other state and federal laws. Plaintiffs are informed and believe that Defendants['] eviction proceeding on the lease occupancy restriction was a pretext and retaliation for Defendants['] discriminatory intent to remove Plaintiffs from the premises for having a prescribed service dog."

The complaint asserts claims for wrongful eviction, breach of the covenant of quiet enjoyment, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, unfair business practices, housing discrimination under California's FEHA (the California Fair Employment and Housing Act) (Gov. Code, § 12955 et seq.), housing discrimination under California's Unruh Civil Rights Act (Civ. Code, § 51 et seq.), unlawful competition, violation of privacy, trespass, violation of Civil Code section 1954 (pertaining to a landlord's entrance into a dwelling unit), and retaliatory eviction (Civ. Code, § 1942.5 et seq.). At issue here are counts one and 13, for wrongful eviction and retaliatory eviction.

Count one is styled "FIRST CAUSE OF ACTION [¶] (Wrongful Eviction, Violation of Rent Ordinance)." It incorporates the allegations summarized *ante*.[3] The count alleges that the "Defendants' " dominant motive for attempting to recover possession of the premises was not a permissible ground under

---

[2] It is not clear how Wallace and Owen could have "produced expert testimony and documentation" if the case was dismissed during jury selection.

[3] The first cause of action actually states that it incorporates the allegations contained in "paragraphs 1 through *41*" of the complaint, which would omit the allegations concerning Victor Wu's intimidation of Ybarra and refusal to allow a subtenant, the filing of the unlawful detainer complaint and the unlawful detainer proceedings, and the allegation of a systematic

the Rent Ordinance, and as a proximate result of "Defendants' wrongful acts alleged herein," Wallace suffered hospitalization and treatment and both she and Owen suffered inconvenience, annoyance, and emotional distress. In addition to trebled damages under the Rent Ordinance, Wallace and Owen seek punitive damages on the ground that "Defendants' conduct was malicious and oppressive."

Count 13 is entitled, "THIRTEENTH CAUSE OF ACTION [¶] (Retaliatory Eviction—Civil Code § 1942.5 et seq.)." It also incorporates all of the allegations of wrongdoing summarized *ante*. Specifically, it alleges that when "Defendants took the actions alleged in paragraphs 1 through 51," their purpose was to retaliate against Wallace and Owen for exercising their rights within 180 days of their complaint to governmental agencies and otherwise exercising their rights under law. As a proximate result of "Defendants' wrongful acts alleged herein," Wallace suffered hospitalization and treatment and both Wallace and Owen suffered inconvenience, annoyance, and emotional distress.

## C. *McCubbin and Merck's Anti-SLAPP Motion to Strike*

In August 2009, McCubbin and Merck filed a special motion to strike under the anti-SLAPP statute. (§ 425.16.) They argued that the first and 13th causes of action arose from conduct the statute protects. Specifically, they contended, the "gravamen of [the] claim" was that all defendants served a bogus notice of termination of the tenancy (the three-day notice) and instigated a frivolous and malicious unlawful detainer action, both of which constituted protected activity. Furthermore, they argued, Wallace and Owen could not prevail on these causes of action, because McCubbin and Merck were not the ones who prosecuted the unlawful detainer action, the alleged wrongful conduct was protected by the litigation privilege, and no liability could arise under a conspiracy theory.

Wallace and Owen opposed the motion to strike. They claimed that the gravamen of the action was one for disability discrimination and did not attack any act of defendants in filing or prosecuting the unlawful detainer action itself. As to the merits, Wallace and Owen argued that they had a probability of proving McCubbin and Merck were the Wus' agents in the prosecution of the unlawful detainer action and the causes of action were not barred by the litigation privilege.

---

campaign of harassment and intimidation against disabled tenants with limited means. The reference to "paragraphs 1 through 41" was apparently meant to incorporate paragraphs 1 through *51*, however, because the first cause of action alleges: "At the time Defendants took the actions alleged in paragraphs 1 through 51 of this complaint . . . ." All of the other causes of action in the complaint incorporated paragraphs 1 through 51.

Wallace and Owen offered declarations in opposition to the motion to strike. In her declaration, Wallace affirmed certain allegations of the complaint and attached a number of documents referenced in the complaint. Also attached was the declaration of Aaron Gonzalez, who supported some of the allegations of the complaint and purported to set forth the history of dogs and tenants at the building during the time he was a tenant. Declarations predating this case were submitted from a number of persons declaring Nemo to be friendly.

## D. Denial of Motion to Strike

The trial court denied the motion to strike. The court explained: "Defendants [McCubbin and Merck] have not carried their initial burden to prove that the gravamen of Plaintiffs' Complaint is based upon protected conduct as that term is defined in Section 426.16 [*sic*]. The gravamen of the Plaintiffs' Complaint is not that the Defendants filed a lawsuit or sent notices or threatened even to send a notice, but that the Defendants engaged in a pattern of disability discrimination designed to drive the Plaintiffs from their home, and that therefore the allegations of what would otherwise be protected conduct are incidental to the thrust of the Plaintiffs' Complaint. And while they are pleaded, they are pleaded as evidentiary support for the course of conduct which went on before and was in full blossom before the potentially protected conduct occurred."

This appeal followed.

## II. DISCUSSION

McCubbin and Merck contend that the first and 13th causes of action arose from activity protected by the anti-SLAPP statute and that Wallace and Owen did not show a probability of prevailing on the merits. We begin with a brief description of the anti-SLAPP statute and then proceed with our analysis.

## A. Code of Civil Procedure Section 425.16

■ Section 425.16 authorizes a defendant to file a special motion to strike when a cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue.[4] It establishes a procedure by which the trial court evaluates the

[4] In pertinent part, section 425.16 provides: "(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶]

merits of the plaintiff's claim using a summary-judgment-like procedure at an early stage of the litigation. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) The purpose is to curb the chilling effect that certain litigation may have on the valid exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal. (§ 425.16, subd. (a).)

■ "In its motion, the defendant must make a threshold showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as specified in the statute. (§ 425.16, subds. (b), (e).) The burden then shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs. (§ 425.16, subd. (c).) We review an order granting or denying a motion to strike under section 425.16 de novo. (*Flatley*, *supra*, 39 Cal.4th at p. 325.)" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1547 [110 Cal.Rptr.3d 129] (*Haight Ashbury*); see *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 998 [85 Cal.Rptr.3d 880].)[5]

---

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(1), (2).) At the time the anti-SLAPP motion was filed in this case, the statute referred to "the United States or California Constitution" rather than "the United States Constitution or the California Constitution." This change making no difference to our analysis, we refer to the statute as it presently reads.

[5] Section 425.16, subdivision (b)(1) provides that a "*cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech" may be subject to a special motion to strike. (Italics added.) It is not entirely clear what the Legislature meant by "cause of action." As defined under the primary right doctrine, a cause of action refers to a singular harm and consists of a primary right of the plaintiff, a corresponding primary duty of the defendant, and an act or acts that breach the duty and infringe the plaintiff's right. (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159–1160 [69 Cal.Rptr.2d 692] (*McDowell*); see *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263] [cause of action is based on the harm suffered, not the legal theory of liability alleged].) At least two cases have defined "cause of action" in section 425.16 using the primary right theory. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 659 [123 Cal.Rptr.3d 301]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [64 Cal.Rptr.3d 488] (*Marlin*).) A more colloquial meaning—and one that other courts have assumed without analysis in anti-SLAPP cases—refers to the allegations a plaintiff has grouped together under the heading of "cause of action," usually according to a particular legal theory or remedy sought, and which is more accurately called a "count." (See *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795–796 [126 Cal.Rptr. 225, 543 P.2d 593] [a way of asserting the cause of action, usually by legal theory, is a "count," but "cause of action" and "count" are sometimes used interchangeably].) As we shall see *post*, "cause of action" may have a narrower definition, such that a "cause of action" arising from protected activity refers to the allegations purporting to base liability specifically on activity set

B. *First Prong: McCubbin and Merck's Burden to Show Protected Activity*

The first prong of the anti-SLAPP analysis required McCubbin and Merck to make a threshold showing that Wallace and Owen's first and 13th causes of action arose from acts "in furtherance of [their] right[s] of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

By statutory definition, an " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in . . . a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

1. *First Cause of Action: Wrongful Eviction*

■ In their first purported cause of action, Wallace and Owen alleged that defendants' attempts to recover possession of their apartment violated the Rent Ordinance, because their dominant motive was not one of the permissible grounds listed in the Rent Ordinance. Section 37.9 of the Rent Ordinance provides that "[a] landlord shall not endeavor to recover possession of a rental unit unless" the landlord's dominant motive pertains to at least one of the occurrences specified in the ordinance. (Rent Ord., § 37.9, subds. (a)–(c).)

According to the complaint, the acts by which defendants attempted to recover possession of the apartment were, or at least included, Victor Wu's service of the three-day notice to quit and his filing of the unlawful detainer action. Indeed, this is the wrongdoing alleged in the complaint that is most obviously related to a wrongful eviction claim.

■ The unlawful detainer action clearly falls within the scope of free speech or petitioning activity protected by the anti-SLAPP statute. "The

forth in section 425.16, subdivision (e). We need not decide this issue for purposes of the first prong of the anti-SLAPP analysis, however, since all of these definitions lead to essentially the same question: is the primary right, count, or assertion of liability based on the defendant's protected activity? We will therefore use the term "cause of action" in our first-prong analysis in the sense of what Wallace and Owen alleged *as* their first and 13th causes of action, and reserve our more thorough consideration of the matter for the second-prong analysis.

prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [67 Cal.Rptr.3d 190] (*Birkner*).) Furthermore, a notice of eviction or termination of a tenancy is protected activity where, as here, it is a legal prerequisite for bringing the unlawful detainer action. (*Id.* at pp. 281–282; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479–1481 [74 Cal.Rptr.3d 1] (*Feldman*) [service of a three-day notice to quit, filing of an unlawful detainer action, and threats by the landlord's agent in connection with the dispute constituted protected activity under § 425.16, subd. (e)].) Wallace and Owen's first cause of action is based on protected activity.

■ Wallace and Owen's arguments to the contrary are unpersuasive. They contend that the wrongful eviction cause of action does not arise from the three-day notice and unlawful detainer litigation, because those acts are merely incidental to their claim. For purposes of anti-SLAPP analysis, however, an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability. (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1550; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477–478 [87 Cal.Rptr.3d 275, 198 P.3d 66] [allegation that "lurk[s] in the background" to explain why a rift between the parties arose]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [90 Cal.Rptr.3d 669] [allegations about a law firm's protected communications for purposes of showing the firm had a conflict of interest]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414–417 [9 Cal.Rptr.3d 242] [defendant's advertising activity was merely incidental to plaintiff's causes of action for personal injury, where liability for those claims was based not on the advertising but on the product's failure to conform to defendant's warranties and statements].) It makes no sense for Wallace and Owen to argue that their cause of action for defendants' attempt to evict them wrongfully is not based on defendants' alleged attempt to evict them.

Wallace and Owen also argue that McCubbin and Merck lack standing to assert their anti-SLAPP motion as to the first cause of action, based on the filing of the unlawful detainer proceedings. They contend that, because McCubbin and Merck did not personally file the unlawful detainer complaint, and it is not expressly alleged that they exhorted Victor Wu to file it, the filing was not in furtherance of *McCubbin and Merck's* rights of free speech and petition. Wallace and Owen did not make this standing argument in the trial court, and the argument is meritless given their allegations in this case.

■ As mentioned, the acts alleged in the complaint that could most likely constitute endeavoring to recover possession of a rental unit under section

37.9 of the Rent Ordinance are the filing of the three-day notice and prosecution of the unlawful detainer action. Wallace and Owen do not explain how the acts attributed directly and specifically to McCubbin and Merck (complaining to the landlord, complaining to Animal Control, etc.) could constitute endeavoring to recover possession of a rental unit within the meaning of the Rent Ordinance. Since Wallace and Owen nonetheless seek to hold McCubbin and Merck liable for wrongful eviction, their wrongful eviction cause of action *must* be based on the three-day notice and the unlawful detainer litigation, whether the complaint is construed to allege that McCubbin and Merck actually performed the acts, participated in them, or are otherwise responsible for them. Indeed, it is alleged extensively in the complaint that all "Defendants [(including McCubbin and Merck)] took the actions alleged in paragraphs 1 through 51" and "*each and every* of the Defendants herein were responsible in some manner for the acts, omissions, and occurrences herein alleged." (Italics added.) Whether McCubbin and Merck performed the acts themselves or merely assisted, exhorted, or motivated the Wus to perform them, McCubbin and Merck may assert their rights under the anti-SLAPP statute. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 16–18 [43 Cal.Rptr.2d 350] [defendant may claim protection under the anti-SLAPP statute, even though he only supported another person who actually performed the protected activity].)

McCubbin and Merck met their initial burden of showing that Wallace and Owen's wrongful eviction cause of action arose from activity protected under the anti-SLAPP statute.

> 2. *Thirteenth Cause of Action: Retaliatory Eviction (Civ. Code, § 1942.5)*

Wallace and Owen allege that all defendants violated Civil Code section 1942.5 by retaliating against Wallace and Owen "for exercising their rights within 180 days of [their] complaint to a governmental agencies [*sic*] and otherwise exercising their rights under law." It is not clear from this allegation whether Wallace and Owen seek recovery under subdivision (a) of Civil Code section 1942.5, subdivision (c) of the statute, or both. Reference to the "180 days" period suggests subdivision (a); reference to "exercising their rights under law" may suggest subdivision (c), and it is this subdivision they reference in their respondents' brief.

Subdivision (a) of Civil Code section 1942.5 precludes a lessor from recovering possession of a dwelling, causing the lessee to quit involuntarily, increasing rent, or decreasing services within 180 days of certain complaints or actions the tenant takes in regard to the tenantability of the dwelling, if the lessor's actions are retaliatory. We do not see how subdivision (a) can apply

in this case, however, since there is no allegation that Wallace or Owen ever complained about the *tenantability* of the dwelling.

Subdivision (c) of Civil Code section 1942.5 provides: "It is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. . . ."

The 13th cause of action does not specify what acts purportedly violated either subdivision of Civil Code section 1942.5. Instead, it asserts that "Defendants took the actions alleged in paragraphs 1 through 51," without distinguishing between the acts of the Wus and the acts of McCubbin and Merck. As mentioned, the complaint asserts that each defendant is liable for the acts of the other.

The "actions alleged in paragraphs 1 through 51," either by McCubbin and Merck or by Victor or Lawrence Wu as part of defendants' "campaign," include the following. In 2006 and 2007: McCubbin and Merck complained to the Wus about Nemo's purported aggressive behavior; McCubbin and Merck started an argument with Wallace about Nemo being overly friendly and noisy; and Lawrence Wu threatened Wallace and Owen that "Defendants" would eventually have Nemo removed. Within 180 days of Wallace's June 2007 complaint to the San Francisco Human Rights Commission about "Defendants'" threats to remove Nemo: Victor Wu interrogated Wallace as to Wallace's need for a service dog and warned that Wallace and Owen would be evicted if they did not get rid of Nemo; McCubbin informed Lawrence Wu that Wallace and Owen were advertising for a new subtenant; Victor Wu intimidated the new subtenant; and McCubbin and Merck filed a complaint with Animal Control about Nemo. Within 180 days after Wallace's November 2007 complaint to the San Francisco Human Rights Commission about McCubbin and Merck: Victor Wu denied Wallace's request for a subtenant, Lawrence Wu stated that subletting would result in legal action, and Victor Wu served a three-day notice to quit and filed the unlawful detainer action.

In sum, Wallace and Owen base their 13th cause of action on the following categories of acts: (1) McCubbin and Merck's complaints to Wallace and Owen; (2) McCubbin and Merck's complaints to the Wus; (3) the Wus' threat to evict Wallace and Owen unless Nemo was removed; (4) McCubbin and Merck's complaint to Animal Control; (5) Victor Wu's treatment of Wallace and Owen's subtenant and refusal of their request to have a third adult reside in the apartment; and (6) the three-day notice to quit and ensuing unlawful detainer action.

Some of these acts clearly constitute protected activity under the anti-SLAPP statute. As we have explained *ante*, service of the three-day notice and the filing of the unlawful detainer action comprise petitioning activity under section 425.16, subdivision (e). (*Birkner, supra*, 156 Cal.App.4th at pp. 281–283; *Feldman, supra*, 160 Cal.App.4th at pp. 1479–1480.)

■ McCubbin and Merck's complaint to Animal Control also falls within section 425.16, subdivision (e). Reports to governmental agencies intended to prompt an investigation constitute activity in furtherance of the right of free speech or petition. (*Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1511–1512 [65 Cal.Rptr.3d 641] [anti-SLAPP statute protects reports of child abuse to investigative authorities].)

■ Wallace and Owen argue that McCubbin and Merck's complaint to Animal Control is not before this court. They contend their cause of action arises not from the complaint to Animal Control but from the "*unstated independent* dominant motive *preceding* that complaint: [t]o force Plaintiffs to leave the property with their companion dog." (Original italics.) But causes of action do not arise from motives; they arise from acts. The act, in the context of Wallace and Owen's allegations, was the complaint to Animal Control.[6]

Other acts on which Wallace and Owen based their 13th cause of action might *not* constitute protected petitioning activity under the anti-SLAPP statute. For example, Victor Wu's threat to evict Wallace and Owen *unless they got rid of Nemo* might constitute a threat to evict or to cause them to involuntarily terminate their tenancy under Civil Code section 1942.5, but it would not be protected under subdivision (e) of Code of Civil Procedure section 425.16, because it was not made in connection with any judicial or administrative proceeding: the ensuing unlawful detainer action was not based on Nemo, but on an impermissible subtenant. As to McCubbin and Merck's complaints to Wallace and Owen about Nemo, and the Wus' refusal to permit a new subtenant, McCubbin and Merck make no argument that those acts constitute protected activity. We also question whether McCubbin and Merck's complaints to the Wus about Nemo would be covered by the anti-SLAPP statute, since they were not made in connection with any judicial

---

[6] Wallace and Owen premised liability in part on McCubbin and Merck's report to Animal Control. Although Civil Code section 1942.5 regulates actions by "a lessor" (Civ. Code, § 1942.5, subds. (a), (c)), and McCubbin and Merck were not the "lessor" of Wallace and Owen's unit, civil liability for the violation of the statute may extend to an "agent of a lessor." (Civ. Code, § 1942.5, subd. (f).) Wallace and Owen stressed in their opposition to the motion to strike that Civil Code section 1942.5 liability lies against McCubbin and Merck as agents. Their idea, apparently, is that McCubbin and Merck perpetrated these acts as agents of the lessor Victor Wu, and they are therefore liable under subdivision (f) of Civil Code section 1942.5.

or administrative proceeding and probably do not constitute statements in connection with a public issue or an issue of true public interest (a matter we need not and do not decide here). The point is that, because the 13th cause of action is based on *some* acts other than the report to Animal Control, three-day notice, and unlawful detainer proceedings, it is based on both protected activity and unprotected activity.

■ Where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' " (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1551; see *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672–673 [35 Cal.Rptr.3d 31] (*Peregrine Funding*) [first prong of anti-SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity].)

The protected conduct alleged in Wallace and Owen's 13th cause of action is not merely incidental to the alleged unprotected conduct. The three-day notice and unlawful detainer are two of the acts on which liability is premised, and those acts are certainly not collateral to a cause of action that seeks relief for causing a lessee to quit involuntarily or bringing an action to recover possession. McCubbin and Merck satisfied the first prong of the anti-SLAPP analysis as to the 13th cause of action. (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1551, fn. 7 ["where the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the [anti-]SLAPP analysis"]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287 [74 Cal.Rptr.3d 873] (*Salma*) [mixed causes of action are subject to a special motion to strike under § 425.16 if "at least one of the underlying acts is protected conduct . . ."].)

### 3. *Respondents' Illegality Argument Is Meritless*

We turn next to Wallace and Owen's arguments that are relevant to both the first and 13th causes of action. As to both of these causes of action, Wallace and Owen contend that the underlying acts are not protected by the anti-SLAPP statute because the acts were shown to be illegal as a matter of law. Their argument is unavailing.

In the first place, Wallace and Owen did not raise this argument in the trial court. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287 [46 Cal.Rptr.3d 638, 139 P.3d 30] [plaintiff must provide notice to defendant and the trial court about the particular statute defendant is alleged to have

violated as a matter of law].) They fail to demonstrate why they should be able to argue the matter now.[7]

 Moreover, the fact that a defendant's conduct was alleged to be illegal, or that there was some evidence to support a finding of illegality, does not preclude protection under the anti-SLAPP law. (*Birkner, supra,* 156 Cal.App.4th at pp. 278–279, 285 [landlord's termination notice did not fall outside the scope of the anti-SLAPP statute merely because it allegedly violated the Rent Ord.]; see *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 612–616 [110 Cal.Rptr.3d 559] [attorney's filing of a credit report in connection with a postdissolution motion, in violation of Cal. rules of court, was protected activity]; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479–481 [99 Cal.Rptr.3d 394] [lodging a will, pursuing probate proceedings, and defending in litigation matters constituted protected activity, even though the acts violated child support evasion statutes].) An exception exists only where "the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence . . . ." (*Flatley, supra,* 39 Cal.4th at pp. 316, 320 [defendant's conduct was criminal extortion as a matter of law]; see *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 541 [59 Cal.Rptr.3d 109]; *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.) Here, however, McCubbin and Merck do not admit any illegality; nor does the evidence *conclusively* establish that *they* committed conduct that was illegal as a matter of law: Wallace and Owen do not prove that McCubbin and Merck *willfully* assisted the Wus in violating the Rent Ordinance (Rent Ord., § 37.9, subd. (e)), their actions were *retaliatory* (Civ. Code, § 1942.5), or they could be liable for the Wus' acts. (See discussion of prong two, *post.*)

### 4. *Respondents' Gestalt Characterization of Their Causes of Action Is Incorrect*

Lastly, we address Wallace and Owen's primary argument: that their first and 13th causes of action, and their complaint as a whole, are not really about the three-day notice or the unlawful detainer action at all, but about "discrimination." In the nomenclature of the anti-SLAPP statute, they contend the

---

[7] McCubbin and Merck contend that, if Wallace and Owen had raised the issue in the trial court, McCubbin and Merck would have responded with a declaration showing that their activity was not illegal. To support this contention, they seek judicial notice (by motion filed Nov. 29, 2010) of their verified answer to the complaint, which alleges, among other things, the Executive Director of the San Francisco Human Rights Commission *retracted* the November 14, 2007 letter on which Wallace and Owen rely; Nemo is not well behaved; Nemo charged McCubbin while she was holding her baby; the police admonished Wallace to keep Nemo leashed at all times when in public; and Nemo shakes the building when running and barking. We grant the request for judicial notice of the verified answer as an indication that such a declaration could have been filed.

first and 13th causes of action arise generally from unlawful discriminatory efforts to oust them from the premises, rather than from the termination notice, unlawful detainer, or any other particular act in itself. As we shall see, respondents' contention is inconsistent with the allegations of their complaint; it is also based on a misconception of the anti-SLAPP statute and case law.[8]

### a. *Wallace and Owen did not allege discriminatory acts*

As a threshold matter, Wallace and Owen's argument that the court should look to the discriminatory gestalt of their allegations rings hollow in light of what they actually pled in connection with their first and 13th causes of action. Although they alleged generally in paragraph 51 that defendants acted as part of a campaign against the disabled and intended to discriminate on the basis of Wallace's disabilities, their more specific allegations asserted that defendants had threatened to evict *other* tenants in the building for having dogs as well. Given this allegation, it is difficult to see how the gravamen of the first or 13th causes of action could be discrimination against the disabled; to the contrary, the causes of action are based on acts of evicting or attempting to evict Wallace and Owen, not discriminating against them.

Conceivably, Wallace and Owen are contending that they are victims of discrimination because, in treating them the same as other tenants, Victor Wu did not accomodate Wallace's disability. Or they might be pursuing a tenuous theory that they were victims of discrimination because Victor Wu tried to evict them on a ground that was different than the one he employed against other tenants: he attempted to get rid of Wallace and Owen (and Nemo) for having an illegal subtenant, since Wallace's disability and need for a service dog precluded evicting them on the ground of having an impermissible pet. This rather odd theory would ultimately run into serious problems, of course, since Rent Ordinance section 37.9 and Civil Code section 1942.5 prohibit certain acts, not discrimination per se. Nonetheless, we proceed to the merits of their gestalt argument.

### b. *Respondents' "gestalt" approach is wrong*

One need look no further than the language of the anti-SLAPP statute to conclude that Wallace and Owen's gestalt theory is incorrect. According to subdivision (b)(1) of section 425.16: "A cause of action against a person arising from any *act* of that person in furtherance of the person's right of petition or free speech" is subject to a motion to strike. (Italics added.) From this language, it is clear that we must look at the nature of the specific "*act*" that allegedly gives rise to the cause of action, not the gestalt or

---

[8] The trial court found that the "gravamen of the Plaintiffs' *Complaint*" was a "pattern of disability discrimination." (Italics added.) Because the anti-SLAPP motion was directed to the first and 13th causes of action, the issue was not the gravamen of the complaint, but the acts on which those two causes of action premised liability.

gist of the allegations generally. (See also *McDowell, supra*, 59 Cal.App.4th at p. 1159 ["cause of action," as classically defined under the primary right doctrine, consists of a wrongful *act* that breaches the defendant's duty and infringes the plaintiff's right].)

Indeed, our Supreme Court has made clear that the statutory language focuses on acts: "In short, the statutory phrase 'cause of action . . . arising from' means simply that the defendant's *act* underlying the plaintiff's cause of action must *itself* have been an *act* in furtherance of the right of petition or free speech. [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], first & third italics added.) We are admonished to examine the act underlying the cause of action, not the gist of the cause of action.

Furthermore, while it is often said that the first prong of the anti-SLAPP analysis calls us to ascertain the "gravamen" of the cause of action, for anti-SLAPP purposes this gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action. (*Haight Ashbury, supra*, 184 Cal.App.4th at pp. 1550–1551; see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1248–1249 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*) [gravamen of a cause of action based on a rent ordinance precluding a landlord from maliciously bringing an action to recover possession is the act of filing a legal action]; see also *Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1535 [49 Cal.Rptr.3d 60] [" 'The gravamen . . . of a cause of action is determined by the primary right alleged to have been violated, not by the remedy sought.' "]; *McDowell, supra*, 59 Cal.App.4th at p. 1159 [same].)[9]

We note as well that Wallace and Owen's gestalt approach would result in an elusive, subjective, and unpredictable exercise that would likely lead to inconsistent decisions. As the Fifth Circuit Court of Appeals observed in a different but similar context: "The gestalt approach adopted by the district court might cause a number of significant problems. First, a court's determination of the 'essence' of the plaintiff's claims is likely to be highly metaphysical . . . ." (*King v. Otasco, Inc.* (5th Cir. 1988) 861 F.2d 438, 441

---

[9] The court in *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494], used the phrase "gravamen or principal thrust of the claims" when deciding whether liability was based on protected activity, but it plainly meant the acts on which the claims were based. The court stated: "Protected speech is not the gravamen or principal thrust of the claims asserted in Plaintiffs' complaint. [Defendant's] commercial speech, although mentioned in the complaint, is largely unrelated to and entirely distinct from the wrongful, injury-causing *conduct* by [defendant] on which Plaintiffs' claims are premised. An examination of each of the pleaded theories of liability illustrates that the principal *acts or omissions* on which each cause of action is founded are independent from collateral *acts* by [defendant] involving commercial speech." (*Id.* at p. 188, italics added.)

[trial court erred in applying statute of limitations to the essential nature of the plaintiff's claims, rather than each individual claim].) Focusing on the *acts* on which liability is based, by contrast, is clearer, simpler, and more predictable.

Finally, Wallace and Owen's gestalt theory would permit crafty plaintiffs to skirt the intended protections of the anti-SLAPP statute, by characterizing their attack on protected activity in broad terms such as "discrimination." (See *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906] ["a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action' "].) Wallace and Owen's gestalt approach is simply untenable.

c. *Respondents' cases are inapposite*

Wallace and Owen do not cite any case holding that a court should look at the gestalt of a cause of action in order to determine whether the anti-SLAPP statute applies. Instead, they rely primarily on *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 [65 Cal.Rptr.3d 469] (*DFEH*), apparently because it held that the gravamen of a complaint was for disability discrimination—the outcome Wallace and Owen urge here. (*Id.* at p. 1281.) The pleading in *DFEH*, however, was vastly different than the causes of action that are the subject of the anti-SLAPP motion before us.

In *DFEH*, a landlord decided to remove its apartment building from the rental market, providing notice pursuant to the municipal code and the Ellis Act (Gov. Code, § 7060 et seq.). (*DFEH, supra,* 154 Cal.App.4th at pp. 1275–1277.) One of the tenants responded that she was disabled and requested an extension of the deadline to vacate the premises, as permitted by statute, but failed to substantiate her disability to the landlord's satisfaction. (*Id.* at pp. 1277–1279.) After an unlawful detainer action, the tenant was evicted. (*Id.* at p. 1280.) The Department of Fair Employment and Housing (DFEH) then sued the landlord for disability discrimination, alleging causes of action for "(1) discrimination in connection with housing accommodation under Government Code section 12955, subdivision (a), the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.); (2) denial of civil rights under Government Code section 12955, subdivision (d), the Unruh Civil Rights Act (Civ. Code, § 51), and Civil Code section 51.2 et seq.; and (3) denial of civil rights under Government Code section 12948 and Civil Code section 54.1, subdivision (d) for disability discrimination." (*DFEH*, at p. 1280.) The DFEH did not assert a cause of action for wrongful eviction or retaliation. (*Ibid.*) The trial court denied the landlord's anti-SLAPP motion to strike the damages portion of the complaint. (*Id.* at pp. 1280–1281.)

The appellate court in *DFEH* concluded that the DFEH's lawsuit did not challenge any particular act the landlord took with respect to its filings in the removal process or its unlawful detainer actions, but for the landlord's alleged acts in failing to make a reasonable accommodation for the tenant's disability. (*DFEH, supra*, 154 Cal.App.4th at p. 1285.) The court explained: "This suit is instead based on DFEH's claims [the landlord] discriminated against [the tenant] by failing to accept the fact of, and accommodate, her disability by granting her an extension of her tenancy to one year." (*Id.* at p. 1287.)

*DFEH* is clearly distinguishable from the matter at hand. *DFEH* did not involve a cause of action for wrongful eviction under Rent Ordinance section 37.9, which addresses actual or attempted eviction. Nor was it based on the antiretaliation statute, Civil Code section 1942.5, which bars retaliatory acts of increasing rent, decreasing services, causing the tenant to quit, or bringing an action to recover possession. Instead, the causes of action in *DFEH* were brought under *antidiscrimination statutes* specifically targeting acts of discrimination. While causes of action for discrimination might arise from acts of discrimination (which the landlords in *DFEH* did *not* claim were protected), Wallace and Owen's causes of action for wrongful eviction and retaliatory eviction arise from acts of actual or threatened eviction—here including the acts of serving a three-day notice and prosecution of the ensuing unlawful detainer case—which *do* constitute protected activity. Indeed, McCubbin and Merck's anti-SLAPP motion was directed only to the first and 13th causes of action, for wrongful eviction and retaliation respectively, and *not* to Wallace and Owen's causes of action for discrimination.[10]

---

[10] The other cases on which Wallace and Owen rely are readily distinguishable as well. In *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1312, 1318 [135 Cal.Rptr.2d 903] (*Pearl Street*), a rent control board filed a lawsuit against a landlord for charging illegal rents; the court held that the anti-SLAPP statute did not apply because the claim was not based on protected activity. In *Marlin, supra*, 154 Cal.App.4th at pages 157–158, a tenant lawsuit against a number of landlords sought a judicial declaration of rights with respect to the landlords' rights to evict them under the Ellis Act; the anti-SLAPP statute did not apply, because the challenge was not to the landlords' protected activity of filing an unlawful detainer action or prerequisite termination notice, but on whether the Ellis Act granted authority for termination of the tenancy. *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286, 1289–1290 [89 Cal.Rptr.3d 24] (*Clark*) held that a tenant's causes of action did not fall within the scope of the anti-SLAPP statute, because they were not premised on the landlords' protected activity of prosecuting an unlawful detainer action, but on the claim that the landlord removed the apartment from the market and fraudulently evicted the tenant to install a family member who never moved in—a claim which could only be raised after the landlord accomplished the eviction—such that the eviction notices and unlawful detainer were merely background to the landlord's *subsequent* violation of the rent ordinance and statute. (As to *Clark*, McCubbin and Merck filed a request for judicial notice (Sept. 20, 2010), asking us to take judicial notice of the complaint in *Clark* on the ground it was necessary to explain what

Much closer to the matter at hand is *Birkner, supra*, 156 Cal.App.4th 275. There, the landlord served a 60-day notice to terminate a tenancy pursuant to the Rent Ordinance's provision for owner-relative move-ins, seeking possession of the apartment so his mother could live there. (*Birkner*, at p. 279.) Under the Rent Ordinance, a landlord could usually terminate a tenancy so that a relative could occupy the premises as his or her principal residence, unless the landlord received notice that a tenant in the unit was disabled or over the age of 60 and had lived there for a specified number of years. (*Birkner*, at pp. 278–279.) The tenants notified the landlord that they fell within this protection, but the landlord refused to rescind the termination notice. Furthermore, evidence indicated that the landlord would have proceeded with an unlawful detainer action if his mother had not died. (*Id.* at p. 280.) The tenant sued for "wrongful eviction-violation of a rent ordinance," negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress. (*Id.* at p. 278.) The trial court denied the landlord's anti-SLAPP motion, concluding the causes of action were not based upon protected activity. (*Ibid.*)

The appellate court reversed. Recognizing that the act of terminating a tenancy is not, in itself, protected activity, the court in *Birkner* ruled that the service of a termination notice and refusal to rescind it *are* protected activities in furtherance of the constitutional rights of free speech or petition if the termination notice is the legal prerequisite for bringing an unlawful detainer action. (*Birkner, supra*, 156 Cal.App.4th at pp. 281–282.) As applied here, the service of the three-day notice was the legal prerequisite for bringing the unlawful detainer action, and both the three-day notice and the unlawful detainer constitute protected activity.[11]

Also on point is *Feldman, supra*, 160 Cal.App.4th 1467. In *Feldman*, a property owner served tenants with a three-day notice to quit, alleging they

---

they believe are analytical errors in *Clark*. We now grant the request for judicial notice but do not rely on the complaint in rendering our decision, because *Clark* is distinguishable on its facts.)

[11] The court in *Birkner* also distinguished *DFEH, Marlin*, and *Pearl Street*, on the ground that the causes of action in *Birkner* did not challenge the *validity* of the Rent Ordinance or any activity by the landlord that *preceded* the service of the termination notice. Instead, they premised liability under the Rent Ordinance on the termination notice. (*Birkner, supra*, 156 Cal.App.4th at p. 283 & fn. 3.) Here too, the complaint does not challenge the validity of the Rent Ordinance, but contends the Rent Ordinance was violated by the three-day notice and the unlawful detainer action. To the extent the complaint also attacks some of the alleged acts of McCubbin and Merck that preceded the filing of the three-day notice and unlawful detainer action, *those* earlier acts are not in connection with a judicial proceeding and do not fall within the scope of section 425.16, subdivision (e)(1) or (2). But that does not change the fact that the most obvious bases for the cause of action—the three-day notice and unlawful detainer action—*are* acts in connection with a judicial proceeding and accordingly constitute protected activity and bring the cause of action under the ambit of the anti-SLAPP statute.

were unapproved subtenants, and then filed an unlawful detainer action. (*Id.* at p. 1475.) The subtenants filed a cross-complaint for wrongful eviction, retaliatory eviction, and numerous other causes of action, claiming among other things that the property owner's agent had made numerous threats before any litigation was actually filed. (*Id.* at pp. 1474–1475.) The property owner filed an anti-SLAPP motion to strike the cross-complaint, on the ground it arose out of protected activity and the alleged wrongdoing was protected by the litigation privilege (Civ. Code, § 47, subd. (b)). (*Feldman, supra,* at pp. 1475–1476.)

The Court of Appeal in *Feldman* held that the causes of action arose from the alleged threats by the property owner's agent, the service of the notice to quit, and the filing of the unlawful detainer action. (*Feldman, supra,* 160 Cal.App.4th at p. 1479.) The filing of the unlawful detainer and the service of the notice to quit constituted protected activity under section 425.16, subdivision (e). (*Feldman,* at pp. 1479–1480.) The court also held that threats by the property owner's agent were also within the scope of the anti-SLAPP statute, as communications in connection with an ongoing dispute and in anticipation of litigation. (*Feldman,* at p. 1481.) The court concluded: "These activities [(filing of the unlawful detainer, service of the three-day notice, and the agent's statements)] are not merely cited as *evidence* of wrongdoing or activities 'triggering' the filing of an action that arises out of some other independent activity. These *are* the challenged activities and the bases for [causes of action including wrongful eviction and retaliatory eviction]." (*Id.* at p. 1483.)

Akin to *Birkner* and *Feldman,* and unlike *DFEH* and the other cases on which Wallace and Owen rely, a three-day notice and an unlawful detainer action were the *bases* of Wallace and Owen's first and 13th causes of action. These alleged acts did not merely precede or trigger the lawsuit by Wallace and Owen; nor were these acts alleged solely as evidence of other wrongdoing that was the actual basis of the lawsuit. (See *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 953–955 [99 Cal.Rptr.3d 609] [distinguishing *Marlin* and *Clark* from *Birkner* and *Feldman*].)[12] For purposes of the anti-SLAPP statute, the first and 13th causes of action arose from protected activity.

---

[12] Some of McCubbin and Merck's alleged acts might be used as evidence of defendants' motivation in attempting to evict Wallace and Owen. Wallace and Owen may even hope to use the unlawful detainer and three-day notice as evidence that all defendants harbored ill intent against Wallace and Owen because of Wallace's disabilities. However, the fact that these acts might be used as evidence of intent, *as well as* the acts on which the claims are based, does not change the fact that, in this case, the causes of action arose from those acts.

McCubbin and Merck met their threshold burden of establishing that the first and 13th causes of action arise from protected activity. We therefore turn to the second prong of the anti-SLAPP analysis.

C. *Second Prong: Wallace and Owen's Burden to Show Probability of Prevailing*

 In the second prong of the anti-SLAPP analysis, the court must determine whether the plaintiff has shown, by admissible evidence, a probability of prevailing on the claim. (§ 425.16, subd. (b).) The trial court in this case did not decide this issue, because it ruled against McCubbin and Merck in prong one. In such circumstances, we may remand the matter to the trial court to conduct the second-prong analysis. (See, e.g., *Birkner, supra*, 156 Cal.App.4th at p. 286.) On the other hand, we have discretion to decide the issue ourselves, since it is subject to independent review. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615–616 [129 Cal.Rptr.2d 546] [deciding prong-two issue despite trial court's failure to reach it].)

Because the parties have different views as to how prong two should be approached, we conclude it would be more efficient for us to resolve the matter in this opinion. We do so by first considering how a plaintiff might demonstrate a probability of prevailing on a claim, and then determining whether Wallace and Owen met that standard in this case.

1. *Determining the Probability of Prevailing*

 When the defendant has made a threshold showing that the plaintiff's cause of action arises from the defendant's free speech or petitioning activity, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 67.) Where the cause of action is based on allegations of unprotected activity *as well as* allegations of protected activity—as with the first and 13th causes of action here, according to Wallace and Owen—the question arises whether the plaintiff can satisfy this burden by showing it could prevail based on any of the allegations underlying the cause of action, or whether the plaintiff must show it could prevail based on the allegations of protected activity alone.

The issue was addressed several years ago in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [15 Cal.Rptr.3d 215] (*Mann*). The court ruled that, if a cause of action is based on both protected and unprotected activity, the plaintiff must show in the second prong of the anti-SLAPP analysis only that it has a probability of prevailing on *"any part*

of its claim," whether it be by showing some merit to the allegations of protected activity or some merit to the allegations of unprotected activity. (*Mann*, 120 Cal.App.4th at pp. 100, 106, some italics omitted.)[13]

In *Haight Ashbury*, the concurring and dissenting opinion asserted that the rule in *Mann* was unwise, largely because it would allow plaintiffs to end-run the anti-SLAPP statute and insulate their meritless attacks on protected activity by merely joining them with nonfrivolous allegations of unprotected activity. The majority in *Haight Ashbury*, however, determined that the issue should be left to "a future case where it is squarely presented for decision." (*Haight Ashbury, supra*, 184 Cal.App.4th at p. 1555.) That "future case" is here, as Wallace and Owen's first and 13th causes of action are based on protected and unprotected activity.

We therefore reexamine what a plaintiff must do to show a probability of prevailing on "the claim" (§ 425.16, subd. (b)(1)), where the plaintiff has based liability on both protected and unprotected activity. We do so by analyzing the statutory language, legislative history, public policy, *Mann*, and two California Supreme Court cases—*Taus v. Loftus* (2007) 40 Cal.4th 683 [54 Cal.Rptr.3d 775, 151 P.3d 1185] (*Taus*) and *Oasis West Realty v. Goldman* (2011) 51 Cal.4th 811 [124 Cal.Rptr.3d 256, 250 P.3d 1115] (*Oasis*).

*Oasis* cited *Mann* with approval, albeit in a case that apparently did not involve a mixed cause of action. *Taus*, which also did not deal with a mixed cause of action, would seem to lead to a result different than the one reached in *Oasis*. To evaluate the applicability of *Taus* and *Oasis* to the matter at hand, therefore, we find it best to begin at the beginning, examining the language of the statute itself.

### a. *Statutory Language*

██ Questions of statutory interpretation must start with the statutory language, according each word a commonsense meaning in light of both the language used and the evident purpose of the statute. (*Hughes v. Board of*

---

[13] The court in *Mann* stated: "Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann, supra*, 120 Cal.App.4th at p. 106, original italics.)

*Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641] (*Hughes*); *Mahon v. County of San Mateo* (2006) 139 Cal.App.4th 812, 821 [43 Cal.Rptr.3d 235] (*Mahon*).) If the statutory language is unambiguous, there is no need for judicial construction. (*Hughes*, at p. 775; *Mahon*, at p. 821.) If the language is susceptible to more than one reasonable meaning, we turn to standard rules of statutory construction and consider other indicia of legislative intent, including the statutory scheme, legislative history and purpose, and public policy. (*Mahon*, at p. 821.)

Subdivision (b)(1) of section 425.16 provides: "A *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue *shall be subject to a special motion to strike, unless* the court determines that the plaintiff has established that there is a probability that *the plaintiff will prevail on the claim*." (Italics added.)

 Thus, while indicating that a "cause of action" targeting protected activity may be struck, the statute allows the plaintiff to avoid that consequence by showing a probability of prevailing on "the *claim*." (§ 425.16, subd. (b)(1), italics added.) To figure out what the plaintiff must do to establish a probability of prevailing on the "claim," we therefore must decide what "claim" means: is it the same as "cause of action," or different? And if it is the same, what does "cause of action" mean? We see three alternative reasonable readings of the statute in this regard.

One reasonable way of looking at the statutory language is that, by the Legislature's use of different terms, a "cause of action" must mean something *different* than the "claim" for which there must be a probability of prevailing. (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 518 [39 Cal.Rptr.3d 55] [use of different words in same section of the law as to the same subject indicates the words were meant to be understood differently].) Thus, while "cause of action" commonly refers to *all* the plaintiff has alleged in a count or as to a primary right, the "claim"—if it is to mean something else—must refer to the antecedent concept in subdivision (b)(1) pertaining more specifically to liability based on "*act*[*s*] . . . in furtherance of the person's right of petition or free speech"—i.e., protected activity. (§ 425.16, subd. (b)(1), italics added.) Under this construction, when the statute requires the plaintiff to show a probability of prevailing on the "claim," it would mean a probability of prevailing on the allegations that

specifically premise liability on the *protected activity*, not a probability of prevailing on some other aspect of what the plaintiff has pled as a cause of action.[14]

A second reasonable reading of the statute would lead to the same result. Section 425.16, subdivision (b)(1) might reasonably be read such that "cause of action" and "claim" mean the *same* thing, with both terms referring to a plaintiff's assertion of liability based on activity protected by the statute. In other words, a "cause of action" arising from protected activity does not mean a count that includes protected activity, but the specific charging allegations that are based exclusively on protected activity.[15] "[T]*he* claim" refers back to this same concept. Given these definitions, the statute would effectively provide: allegations of liability arising from protected activity are subject to a motion to strike unless the plaintiff shows a probability of prevailing on those allegations of protected activity. Under this interpretation as well, the plaintiff would have to show some modicum of merit to its assertion of liability that targets *protected* activity.

A third reading of the statute would again conclude that "cause of action" and "claim" refer to the same thing, but this time in the sense that "the claim" refers back to the subdivision's reference to a "cause of action" as a *count* (everything the plaintiff alleged in what it termed, e.g., its "thirteenth cause of action"). In effect, the subdivision would provide that a cause of action (count) arising from protected activity is subject to a motion to strike unless

---

[14] To elaborate a bit further, a complaint may allege that protected activity gives rise to more than one "cause of action," whether a cause of action is meant in its technical sense (an act that breaches a duty, thus infringing upon a primary right (see *South Sutter, LLC v. LJ Sutter Partners, L.P., supra*, 193 Cal.App.4th at p. 659; *Marlin, supra*, 154 Cal.App.4th at p. 162)) or in its colloquial sense (the count or legal theory the plaintiff has alleged). The second prong of the anti-SLAPP analysis tests whether the plaintiff has a probability of prevailing on the plaintiff's "claim" that the protected activity, in itself, gives rise to liability under these causes of action. There may be a probability of prevailing as to one cause of action but not another, due to a difference in the elements of the legal theory or the defenses available. Thus the difference between "claim" and "cause of action." If there is no probability of prevailing on a claim targeting protected activity, the cause of action is "subject to a special motion to strike" (§ 425.16, subd. (b)(1)), and that portion for which there is no probability of prevailing is stricken. (See *post*.)

[15] It makes sense in the context of section 425.16 to equate the statute's concept of a cause of action arising out of protected activity with the specific *part* of a count that bases liability on protected activity. After all, if any part of the count asserts that the defendant should be held liable based on protected activity, the plaintiff is in effect saying that the protected activity itself supports a cognizable cause of action—in short, that he or she has a cause of action arising out of protected activity. (See *Taus, supra*, 40 Cal.4th at pp. 717–718, 722.) We also note that section 425.15, reenacted by the same legislation that enacted section 425.16, appears to use "cause of action" and "claim" interchangeably in this very manner. And, as discussed *post*, legislative history may support this interpretation as well.

the plaintiff shows a probability of prevailing on the cause of action (count) arising from protected activity.

Under this construction, a cause of action arising *entirely* from protected activity would be subject to a motion to strike unless the plaintiff showed a probability of prevailing on the cause of action arising entirely from protected activity. In the case of a mixed cause of action, a cause of action arising *in part* from protected activity would be subject to a motion to strike unless the plaintiff showed a probability of prevailing on the cause of action arising in part from protected activity. This, however, merely begs the question: *how* does the plaintiff show a probability of prevailing on the cause of action arising *in part* from protected activity—with the part that targets protected activity, or the part that does not?

If we look no further than the words in subdivision (b)(1) of section 425.16, we might venture that the Legislature, by its silence on this point, was content to allow a plaintiff to establish a probability of prevailing based on protected *or* unprotected activity. We would quickly find, however, that other provisions of the same statute, as well as the purpose apparent from the face of the statute as a whole, suggest the contrary.

Taken as a whole, it is plain from the words in section 425.16 that its purpose is to scrutinize a plaintiff's attempt to base liability on the activity identified in subdivision (e) of section 425.16. To protect activity identified in subdivision (e), it would be reasonable to have the court examine whether the plaintiff's attack on *that* activity has any inkling of merit. By contrast, it would be unreasonable to purport to protect the activity in subdivision (e) by looking at the merit of activity *not* mentioned in subdivision (e). The logical inference, then, is that a plaintiff basing liability on both protected activity and unprotected activity should have to establish a probability of prevailing as to his or her attack on the activity the statute was designed to protect— *protected* activity—nothing more than that, and nothing less.

■ Adopting any of these three alternatives as the plain meaning of section 425.16, subdivision (b)(1) would compel a plaintiff to demonstrate a probability of prevailing on his attempt to base liability on *protected activity*. The fact that there are three alternatives may suggest subdivision (b)(1) is ambiguous, but the ambiguity is of no moment since all three alternatives point to the same conclusion—any ambiguity as to whether "cause of action" and "claim" mean the same thing or different things is overcome by the statute's obvious purpose of protecting meritless attacks on the activity set forth in subdivision (e) of section 425.16. (See *Taus, supra*, 40 Cal.4th at pp. 742–743 [purpose of anti-SLAPP statute is to minimize the chilling of protected activity].) On this basis, the face of the statute discloses only one

reasonable answer to the question of what a plaintiff must do to show a probability of prevailing, and there is no need to resort to legislative history or other means of statutory construction: a plaintiff must show a probability of prevailing on the assertion of liability based on protected activity, and nothing else.

But let us assume there is some material ambiguity in the statute, and for the sake of a more exhaustive analysis consider what we might glean from the legislative history of section 425.16.

### b. *Legislative History*

To analyze legislative history, we must appreciate its context. When the legislators discussed Senate Bill No. 1264 (1991–1992 Reg. Sess.)—the bill that ultimately became section 425.16—the legislators had before them examples of SLAPP lawsuits in which the *entirety* of the complaint had consisted of a meritless attack on protected activity. (See, e.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.) Feb. 25, 1992, p. 4.) There is no evidence that the Legislature explicitly debated how its concerns would be applied to a lawsuit or cause of action that also attacked unprotected activity.

Of course, no one could seriously contend the Legislature would not want to apply the statutory protections to a mixed cause of action in *some* manner, since otherwise a plaintiff could merely end-run the statute by alleging unprotected activity as well as protected activity. The point remains, however, that the legislative history is silent on what a court should do when a lawsuit, "cause of action," or even "claim" is based on unprotected activity as well as protected activity.

Two things that the legislative history does make abundantly clear, however, inform our inquiry. First, quite obviously, the Legislature wanted to authorize courts to strike meritless assertions of liability that were based on protected activity. When the legislative history refers to subjecting a cause of action to a special motion to strike, the reference pertains to striking assertions of liability that were based on protected activity. When the legislative history refers to requiring a probability of prevailing on a claim or cause of action, the reference is to requiring a showing of some merit as to the assertions of liability that targeted protected activity.[16] Not once does the

---

[16] For this reason, the legislative history is consistent with the interpretation that "cause of action" and "claim" in section 425.16, subdivision (b)(1) both refer to the specific allegations of protected activity that the plaintiff contends could give rise to liability. From this it would follow that, in establishing a probability of prevailing on "the claim," the plaintiff must show such a probability as to the assertion of liability based on protected activity, and if the plaintiff

legislative history state that a court is empowered to let baseless claims targeting protected activity stay in the case.

Second, it is also clear and unassailable that the Legislature did not explicitly authorize a trial court to examine or strike allegations that did *not* target protected activity. Not once in the legislative history do the terms "cause of action," "claim" or "lawsuit" refer to assertions of liability based on unprotected conduct. We do not know whether this was because the Legislature did not consider the issue, or because it simply did not want the statutory procedure ever to apply to activity the statute was not intended to protect. The bottom line, however, is that the Legislature expressed no grant of authority to the courts to do what the *Mann* rule would have them do.

The upshot of the legislative history, therefore, is this: the Legislature explicitly authorized courts to examine and strike meritless assertions of liability targeting protected activity, but it did not explicitly authorize courts to examine or strike assertions of liability targeting unprotected activity— much less allow a plaintiff to continue his attack on a defendant's pursuit of his rights of free speech and petition by adding allegations of unprotected activity.

Another reference in the legislative history may be instructive as well. Legislators were informed that the proposed anti-SLAPP law would be "similar [to] provisions in the law which are intended to screen out meritless cases at an early stage," referring to punitive damages claims for medical malpractice (Code Civ. Proc., § 425.13), causes of action against attorneys for certain civil conspiracies with clients (Civ. Code, § 1714.10), and punitive damages claims against religious organizations (Code Civ. Proc., § 425.14). (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.) Feb. 25, 1992, p. 5.) All of these statutes require the court to determine the merit of a particular basis for liability, *not* an entire count or lawsuit. (§§ 425.13, subd. (a), 425.14; Civ. Code, § 1714.10.)[17]

---

fails in this regard, the protected activity would be stricken as the basis of liability. (See also State and Consumer Services Agency, Analysis of Sen. Bill No. 1264 (1991–1992 Reg. Sess.) Aug. 25, 1992, p. 1 ["This bill states that a *claim* against a person arising out of his or her exercise of a constitutional right of petition or free speech 'in connection with a public issue shall be subject to a special motion to strike' unless the court determines that the plaintiff has established that there is a 'probability' that the plaintiff will prevail on the *claim.*" (italics added)]; *id.* at p. 3 [the bill "gives the defendant the right to file a 'special motion to strike' *the claim*" (italics added)].)

[17] The Legislature was advised that SLAPP's are legally unsuccessful lawsuits that exact a high toll from targeted defendants and deter others from exercising their petitioning rights. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.) Feb. 25, 1992, p. 3.) Cases thereafter characterized SLAPP's as lawsuits brought not to recover damages or vindicate a legal right, but merely to run up the defendant's litigation costs. (E.g., *Wilcox v.*

In sum, while the legislative history is not dispositive of the issue, it is certainly consistent with a rule that requires the plaintiff to demonstrate a probability of prevailing on his or her, attempt to base liability on protected activity, and not to permit the plaintiff to proceed with a claim targeting protected activity merely because the plaintiff may have also alleged a potentially meritorious claim based on unprotected activity.

### c. *Public policy*

Requiring the plaintiff to show a probability of prevailing on the part of his or her causes of action that targets *protected* activity would dissuade plaintiffs from asserting meritless claims based on protected activity and chilling the free exercise of First Amendment rights of free speech and petition. This is a good thing. In fact, it comports with a legislative desire expressed in the statute: "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed *broadly*." (§ 425.16, subd. (a), italics added; see *Taus, supra*, 40 Cal.4th at pp. 742–743 ["the fundamental purpose of the anti-SLAPP statute [is] to minimize the chilling of conduct undertaken in furtherance of the constitutional right of free speech"].)

By contrast, under the *Mann* rule—permitting the plaintiff to show a probability of prevailing based on *un*protected activity—the plaintiff could circumvent this laudatory purpose and insulate his or her baseless attacks on a defendant's exercise of free speech and petition, merely by also alleging some unprotected activity for which there is some probability of success, and inserting it into the same count. Indeed, all the plaintiff would have to do would be to show some modicum of merit to the claims based on *un*protected activity, and the trial court would never even have to look at the merit of the claims targeting protected activity. That seems to be an odd way of protecting the activity the statute calls us to protect.[18] As the court in *Peregrine Funding* observed in another context: "Where, as here, a cause of action alleges the plaintiff was damaged by specific acts of the defendant that constitute

---

*Superior Court* (1994) 27 Cal.App.4th 809, 815–817 [33 Cal.Rptr.2d 446].) By this definition, a lawsuit would not be a true SLAPP if it included a claim that had some merit. The Legislature, however, must have been concerned with more than precluding true SLAPP's. Otherwise, a meritless cause of action based solely on protected activity would *not* be struck from a complaint if there were any merit to some other cause of action in the complaint. That is neither what the statute says nor the law. (*Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 150 [106 Cal.Rptr.2d 843]; *Coretronic Corp. v. O'Connor* (2011) 192 Cal.App.4th 1381, 1388 [121 Cal.Rptr.3d 254].)

[18] Arguably, a trial court's determination that there was no probability of prevailing on protected activity might dissuade or preclude the plaintiff from thereafter using the protected activity as a basis for liability, even if the allegations were not actually struck. The problem,

protected activity under the statute, it defeats the letter and spirit of section 425.16 to hold it inapplicable because the liability element of the plaintiff's claim may be proven without reference to the protected activity." (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 674.)

If indeed the statutory goal is to make sure that free speech and petition are not chilled by meritless claims based on protected activity, meritless claims of protected activity should not be spared merely because of other claims based on *un*protected activity. Claims that target the exercise of constitutional rights of free speech and petition chill the future exercise of our rights of free speech and petition, and they do not cease to do so merely because other claims, whether meritorious or not, have been added to the lawsuit. While a mixed cause of action does not present a situation where the entirety of a complaint was filed solely for the purpose of running up the defendant's costs rather than obtaining relief, the part frivolously targeting protected activity still increases the defendant's costs—not for the purpose of obtaining relief, but for the purpose of punishing the defendant for speaking and petitioning activity, and thus deterring the defendant and others from exercising their First Amendment rights in the future. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 687 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [defending against an invalid theory of liability, in addition to a valid theory of liability, may be so burdensome as to impair the defendant's interest in freedom from unreasonable litigation].) Since meritless claims of protected activity should not be insulated by claims of unprotected activity—whether meritorious or not— there is no reason to decide whether claims of unprotected activity have merit.

For these reasons, a rule by which the plaintiff must show the probability of prevailing on alleged claims of protected activity, and only those claims of protected activity, is aligned with public policy and consistent with the statute's language and legislative history.

But what about *Mann*?

### d. *The Reasoning in* Mann *Is Not Persuasive*

We tread lightly in our discussion of *Mann*, not only out of respect for our colleagues in the Fourth Appellate District who authored it, but also because our Supreme Court has now cited it with approval in *Oasis*. We also recognize that *Mann* did not undertake a formal construction of the language of section 425.16, analyze its legislative history, or address at length the

---

however, is that, under the *Mann* rule, a trial court would not have to decide whether there was a probability of prevailing on protected activity once it found a probability of prevailing on unprotected activity.

policy concerns we identify in this opinion. Nonetheless, we would be remiss if we did not express our view that the justifications that were offered in *Mann* do not support the rule.

The court in *Mann* concluded a plaintiff can establish that its cause of action has merit if it shows a probability of prevailing on *"any part* of its claim." (*Mann, supra*, 120 Cal.App.4th at p. 106, italics added.) That is not, however, the language of the statute. Subdivision (b)(1) of section 425.16 expressly requires the plaintiff to show a probability of prevailing not on "any part of its claim" (*Mann*, at p. 106), but on "the claim" (§ 425.16, subd. (b)(1)).

The court in *Mann* also expressed concern that a trial court should not have to "engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action" and "need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann, supra*, 120 Cal.App.4th at p. 106.) The court's concern, however, seems misplaced to us. If the plaintiff is required to demonstrate some merit in the part of his count that is based on protected activity, the trial court would not have to determine the merits of "all theories," but only those premised on protected activity.

The court in *Mann* further pointed out that "a defendant has other options to eliminate theories within a cause of action that lack merit or cannot be proven," such as a motion to strike under section 436 or a motion for summary adjudication. (*Mann, supra*, 120 Cal.App.4th at p. 106.) The fact that a defendant may have other ways of removing the allegations of protected activity from the case, however, appears beside the point. After all, it was the insufficiency of these other procedural mechanisms that motivated our Legislature to enact the anti-SLAPP statute in the first place. Forcing a defendant to go to the expense, time, and effort to remove the allegations in other ways does not curb the chilling effect on the exercise of free speech and petition rights as intended by the statute.

In fact, *Mann*'s reliance on the availability of other motions to get rid of meritless allegations of protected activity leads to a rather puzzling result. One would think that the anti-SLAPP procedure at an early stage of the litigation would be used to deal with claims that are based on protected activity, leaving summary judgment and other motions to deal with claims based on unprotected conduct. Under *Mann*, however, summary judgment and other motions might be used to deal with claims based on *protected* conduct, while the anti-SLAPP procedure, imposed so early in the case, would be used to deal with claims based on *unprotected* conduct.

Finally, the court in *Mann* assumed that the anti-SLAPP statute could not be employed to strike only part of a cause of action. (*Mann, supra*, 120 Cal.App.4th at p. 106.) It expressly related this assumption to its conclusion that a plaintiff's claims based on unprotected activity in a "cause of action," or count, could save a plaintiff's meritless claims based on protected activity in the same count. (*Ibid.*) Indeed, if a court could not strike just part of the plaintiff's count in a mixed cause of action, it might be appropriate to look beyond the allegations of protected activity, to see if the unprotected activity was also so meritless as to justify dismissal of the entire count.

The court in *Mann* did not cite particular authority for its assumption that section 425.16 precluded the striking of part of a cause of action. The statute simply states that a cause of action may be subject to a special motion to strike.[19] As we shall see *post, Mann*'s assumption in this regard is inconsistent with our Supreme Court's subsequent holding in *Taus*; but first, let us see why it discloses an additional shortcoming of the *Mann* rule when applied to a mixed cause of action.

Assume that a plaintiff has alleged a cause of action (count) containing protected activity and unprotected activity. The defendant files a special motion to strike. In prong two, the plaintiff would try to show the merit of its claims based on protected activity. Unless the plaintiff is extremely confident that it can establish this merit at such an early point in the case, the plaintiff would also attempt to show a probability of prevailing based on the unprotected activity, not only to save the allegations of protected activity (under the *Mann* rule), but also to save the remainder of the cause of action from being stricken. If the plaintiff *can* make that showing, the plaintiff has saved the cause of action, albeit at additional effort and expense. But if the plaintiff *cannot* make that showing, the entire count—protected activity *and unprotected*—is stricken with prejudice, before the plaintiff has had the usual

---

[19] If a "cause of action" refers to the allegations based particularly on protected conduct, the statute's directive that a cause of action is "subject to a special motion to strike" plainly provides for those specific allegations to be struck, without regard to any other allegations in the same count. (§ 425.16, subd. (b)(1).) But even if "cause of action" means what the plaintiff has alleged as a count, the statute does not state that a court only has the options of striking all of the cause of action or none of it. As of the enactment of section 425.16, it was well recognized that a "motion to strike" could result in the striking of "the whole *or any part of*" a pleading. (§ 435, subd. (b)(1), italics added.) The motion to strike authorized by section 425.16 is "special," because it does not depend on the requisites for a motion under section 435, but uses a different procedure when a defendant's liability is based on activity set forth in section 425.16, subdivision (e). Putting this together, subdivision (b)(1) of section 425.16 may reasonably be read as follows: a cause of action arising from protected activity is subject to being struck, in whole or in part, to the extent it contains meritless assertions of liability based on protected activity. By striking the protected activity as a basis for liability, the legislative concerns expressed in the statute would be satisfied.

opportunity to develop the case, and even though there is no stated authority in the statute or legislative history for testing the merit of claims based on unprotected activity.

We must indeed be mindful of the burdensome nature of the procedure mandated by section 425.16. To demonstrate a probability of prevailing, the plaintiff must produce *admissible evidence*, from which a trier of fact could find in the plaintiff's favor, as to every element the plaintiff needs to prove at trial and at least one element of any applicable affirmative defense. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786] [requiring admissible evidence].) And the plaintiff must usually do so within about two months after filing the complaint and without conducting any discovery whatsoever except by court order—after yet further motion practice. (§ 425.16, subds. (f), (g).) It is one thing to impose this burden on the plaintiff for claims that actually target the activity protected under section 425.16, subdivision (e). It is quite another thing to impose this burden on the plaintiff for claims that have nothing to do with that protected activity, under threat of permanently eradicating those claims even if sufficient evidentiary support could eventually be collected in the normal course of litigation. What is more, since a plaintiff cannot effectively amend a complaint after an anti-SLAPP motion has been filed, a plaintiff cannot avoid the draconian result of the *Mann* rule by voluntarily deleting the allegations of protected activity from its complaint. (See *Salma, supra,* 161 Cal.App.4th at pp. 1293–1294; *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1054–1056 [18 Cal.Rptr.3d 882].)

Therefore, *Mann* not only permits the plaintiff to shield meritless claims of protected activity, it permits the defendant to force the court to test (and strike) claims of unprotected activity under the banner of a statute that does not even purport to protect such activity. Allowing a defendant to do this, with the hopes of getting rid of the entire count rather than just the claims targeting protected activity, would turn the statute's "special motion to strike" (§ 425.16, subd. (b)(1)) into a "broad-brushed" premature summary adjudication motion. (Compare § 425.16, subd. (f) [anti-SLAPP motion may be filed *within 60 days of service* of complaint or by court order] with § 437c, subd. (a) [summary judgment motion may be filed *after 60 days from opponent's general appearance* or by court order, upon 28 days' notice].) In our view, that is not sound public policy. Nor does it seem wise to force trial judges to wade through the evidentiary submissions and legal arguments to rule on such a motion, whether their additional effort would be minimal (as in the matter before us) or substantial (as in a situation where the bulk of allegations are based on unprotected activity (see, e.g., *Haight Ashbury, supra,* 184 Cal.App.4th at pp. 1544–1545, 1552)), without clear indication from the statute or the Legislature that such effort is required.

We also find unconvincing our concurring and dissenting colleague's analysis of the *Mann* rule. First, our colleague embraces *Mann* on the assumption that the Legislature enacted section 425.16 to address the problem of actual SLAPP's—lawsuits that in their entirety are both meritless and target protected activity. Acknowledging that the Legislature ultimately did not preclude just SLAPP's, but also causes of action that arise from protected activity, our colleague concludes that the Legislature actually intended to preclude SLAPP's *or* "SLAPP cause[s] of action." (Conc. and dis. opn. of Jones, P. J., *post*, at p. 1218.) A "SLAPP cause of action," however, would not be a mixed cause of action, but a cause of action that is entirely meritless *and* entirely premised on protected activity. The proffered rationale therefore does not justify the *Mann* rule in the matter at hand.

Next, the concurring and dissenting opinion contends that *Mann*'s analysis has been followed by other courts, citing *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124–1125 [41 Cal.Rptr.3d 1] (*A.F. Brown*), and *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 786 [83 Cal.Rptr.3d 95] (*Platypus Wear*). Neither of those cases, however, cited or applied *Mann* to permit a plaintiff to show a probability of prevailing on claims based on unprotected activity in order to save a meritless claim based on protected activity.[20]

 The concurring and dissenting opinion further contends that the doctrine of legislative acquiescence insulates *Mann* from judicial reconsideration, because the Legislature amended section 425.16 twice after *Mann* was decided. In enacting those amendments, however, the Legislature did not address the relevant section 425.16, subdivision (b)(1), never mentioned *Mann*, and said nothing about what a plaintiff must do to establish a probability of prevailing in the context of a mixed cause of action. To the

---

[20] In *A.F. Brown Electrical Contractor*, the court cited *Mann* for the proposition (relevant to the first prong) that defendants "need not prove that *all* of their acts alleged in a cause of action fall within the anti-SLAPP statute's protection," and (as to the second prong) the "plaintiff need only demonstrate the cause of action has some merit," not merit on all theories within the cause of action. (*A.F. Brown, supra*, 137 Cal.App.4th at pp. 1124–1125.) The court found that the defendants failed to meet their burden on the first prong, so it did not have to consider whether the plaintiff demonstrated a probability of success, rendering its reference to *Mann* mere dictum. (*A.F. Brown*, at p. 1130.) In *Platypus Wear*, the court was concerned with whether the trial court had erred in permitting a defendant to file an anti-SLAPP motion after the statutory deadline. (*Platypus Wear, supra*, 166 Cal.App.4th at p. 780.) In rejecting the defendant's argument that his tardy anti-SLAPP motion would give the trial court greater discretion to parse causes of action, the appellate court cited *Mann* for the proposition that an anti-SLAPP motion was not to be used for that purpose. (*Platypus Wear*, at p. 786.) *Platypus Wear* did not address the issue before us. Nor did *A.F. Brown Electrical* or *Platypus Wear* analyze *Mann* in light of the anti-SLAPP statute's language, legislative history, or public policy, as we do here.

contrary, in 2005—the year after *Mann* was decided—the Legislature explicitly noted its intent to overrule the holdings of *other* cases on an entirely different point. (See Stats. 2005, ch. 535, § 3, p. 4123.) Much more than this is required for legislative acquiescence. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1108 [17 Cal.Rptr.2d 594, 847 P.2d 560] [more than mere silence is required before an inference of acquiescence is elevated to implied legislation; legislative inaction is " ' " ' "a weak reed upon which to lean" ' " ' "]; cf. *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 816 [11 Cal.Rptr.3d 298, 86 P.3d 354] [principle of legislative acquiescence applied where the Legislature *reenacted* a statute after judicial decisions construed it, and the legislative history of the reenactment expressly *acknowledged* those decisions].)

We therefore turn to what our Supreme Court said in *Taus*.

### e. *The Lessons of* Taus

In *Taus, supra,* 40 Cal.4th 683, the plaintiff sued the defendants for acts of investigating, publishing, and publicly discussing the plaintiff's background and private life without her consent. (*Id.* at p. 689.) The first amended complaint set forth four "causes of action": negligent infliction of emotional distress; invasion of privacy; fraud; and defamation. (*Id.* at pp. 701–702.) The defamation cause of action contained a "claim" as to one defendant, related to statements made in a certain article, and a "claim" as to another defendant, based on different statements she made in another article and at a conference. (*Id.* at p. 702.)

The defendants filed motions to strike the amended complaint under section 425.16. (*Taus, supra,* 40 Cal.4th at p. 702.) The trial court denied the motion to strike the causes of action for negligent infliction of emotional distress and invasion of privacy. As to the third and fourth purported causes of action for fraud and defamation, the court granted the motion to strike the cause of action as to one defendant, but not the other. (*Id.* at p. 702.) The defendants appealed.

The Court of Appeal held, inter alia, that the plaintiff failed to demonstrate a probability of prevailing on negligent infliction of emotional distress and failed to demonstrate a probability of prevailing as to some, but not all, of the acts allegedly supporting liability under theories of invasion of privacy and defamation. (*Taus, supra,* 40 Cal.4th at pp. 704–709.) The Court of Appeal ruled that the lawsuit could go forward on theories of invasion of privacy (more specifically, improper disclosure of private facts and improper intrusion into private matters) and defamation, based on *some* of the defendants' alleged acts, but not as to other alleged acts. (*Id.* at p. 711.)

Our Supreme Court accepted review to decide "whether the Court of Appeal properly concluded that dismissal under the anti-SLAPP statute was improper with regard to plaintiff's claims relating to . . . four incidents of conduct." (*Taus, supra,* 40 Cal.4th at p. 711.) More precisely, the question was whether the plaintiff had established a probability of prevailing as to certain contentions of liability that were a *subset* of the plaintiff's purported causes of action and lawsuit. (*Ibid.*)

After noting that the alleged conduct fell within the scope of activity protected by section 425.16, subdivision (e) (*Taus, supra,* 40 Cal.4th at p. 712), our Supreme Court honed in on the second prong of the anti-SLAPP analysis. The court observed that "in order to avoid dismissal of each *claim* under section 425.16, plaintiff bore the burden of demonstrating a probability that she would prevail on the *particular claim.*" (*Taus,* at p. 713, italics added.) Furthermore, the court explained, section 425.16, subdivision (b)(1) "affords the defendant the opportunity, at the earliest stages of litigation, to have the *claim stricken* if the plaintiff is unable to demonstrate both that the *claim* is legally sufficient and that there is sufficient evidence to establish a prima facie case *with respect to the claim.*" (*Taus,* at p. 714, italics added.) These depictions explain, essentially, that each challenged basis for liability must be examined individually to determine if the plaintiff has demonstrated a probability of prevailing, and if the plaintiff has failed to do so, then that basis for liability is struck from the plaintiff's pleading.

And that is precisely what our Supreme Court did. The court concluded that "the Court of Appeal erred in finding that plaintiff had satisfied her burden of establishing a prima facie case on any cause of action based on" three of the four instances of protected conduct, but the Court of Appeal was correct that the plaintiff had established a prima facie case as to the fourth. (*Taus, supra,* 40 Cal.4th at pp. 715, 742.) By way of summary, the Supreme Court asserted: ."Finally, although we have determined that defendants' motion to strike the complaint pursuant to the anti-SLAPP statute properly was denied as to *one facet of one of the numerous causes of action alleged* in the complaint, it is apparent when the determinations of the Court of Appeal and this court are viewed as a whole that the overwhelming majority of plaintiff's claims properly should have been struck in the trial court under the anti-SLAPP statute. Under these circumstances, and consistent with the fundamental purpose of the anti-SLAPP statute to minimize the chilling of conduct undertaken in furtherance of the constitutional right of free speech, we conclude that it is appropriate to award defendants their costs on appeal." (*Id.* at pp. 742–743, italics added.) In short, our Supreme Court ruled that, in response to an anti-SLAPP motion brought as to an entire complaint containing several causes of action, a *part* of a cause of action could be struck because the plaintiff failed to establish a probability of prevailing *as to that particular part.*

One would think that *Taus* would be the death knell for the rule ventured earlier in *Mann*. Although *Taus* did not involve a mixed cause of action, the implications are clear. In evaluating the probability of prevailing on assertions of liability based on protected activity, the court in *Taus* looked at whether *those* assertions—not any others in the purported cause of action or count—had any merit. In deciding what should be struck, the court in *Taus* deemed it appropriate to strike the meritless assertions of liability based on protected activity—nothing more and nothing less—even though they comprised a *part* of what the plaintiff had called a "cause of action." Given that a meritorious claim of protected activity could not save a meritless claim of protected activity in *Taus*, a meritorious claim of *un*protected activity should not be able to save a meritless assertion of protected activity in a mixed cause of action.[21]

Given the language of section 425.16, its legislative history, public policy concerns, the genesis of the *Mann* rule, and our Supreme Court's subsequent teaching in *Taus*, we would conclude that the second prong of anti-SLAPP analysis requires a plaintiff to demonstrate with admissible evidence a probability that it would prevail on its cause of action arising from protected activity, based only on its allegations of protected activity. If the plaintiff failed in this regard, the meritless claims based on protected activity would be stricken as a basis for liability.

Then came *Oasis*.

### f. *Oasis*

In *Oasis, supra*, 51 Cal.4th 811, an attorney represented Oasis West Realty in its effort to obtain city council approval of a redevelopment project. The attorney later terminated the representation and became involved in a campaign to thwart that very project. Oasis then sued the attorney and his law firm for breach of fiduciary duty, professional negligence, and breach of contract. The defendants filed an anti-SLAPP motion to strike, contending that all of the causes of action arose from protected activity.

---

[21] According to the concurring and dissenting opinion, the court in *Taus* looked at the probability of prevailing only as to the four grounds of liability at issue, rather than as to other claims in the same causes of action, because the striking of only those four grounds of liability were before the court. *Taus* cannot be disregarded so easily. In deciding whether those grounds of liability—which comprised part of their respective causes of action—should have been stricken under the anti-SLAPP statute, the obvious threshold question is whether part of a cause of action *can* be stricken under the anti-SLAPP statute. *Taus* necessarily assumed it can. Indeed, the fact that the issue in *Taus* was framed for review in terms of whether independent bases of liability should be dismissed, rather than entire causes of action, underscores that assumption. While *Taus* did not make this assumption an explicit holding of the case, it reflects an analysis that we believe is better geared to rendering just and efficient results in keeping with the language and intent of the statute.

The trial court held that the anti-SLAPP statute did not apply because the gravamen of the causes of action was a breach of the duty of loyalty rather than petitioning activity. The Court of Appeal reversed, finding the claims arose from protected activity and Oasis had failed to demonstrate a probability of prevailing because there was no rule that barred the attorney from doing what he did.

Our Supreme Court did not address the first prong of anti-SLAPP analysis and proceeded instead to the second, pertaining to the probability of prevailing. The court quoted the following from *Mann*: "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis, supra,* 51 Cal.4th at p. 820, original italics, quoting *Mann, supra,* 120 Cal.App.4th at p. 106.) The court then considered all of the causes of action together, because they were all based on the attorney's breach of his duties as a former attorney to his client. The court stated: "The complaint identifies a number of acts of alleged misconduct and theories of recovery, but for purposes of reviewing the ruling on an anti-SLAPP motion, it is *sufficient to focus on just one*." (*Oasis,* at p. 821, italics added.) Based on the fact that the attorney had agreed to represent Oasis in securing approvals for the project, acquired confidential information from Oasis during the representation, and later decided to publicly oppose the same project, the court concluded that "Oasis has demonstrated a likelihood of prevailing on each of its three causes of action." (*Oasis,* at p. 822.)

*Oasis* clearly holds that, where a cause of action (count) is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least *one* of the asserted bases for liability.

In reaching this conclusion, *Oasis* did not mention *Taus,* which would dictate a different result. Under *Taus,* where a cause of action includes multiple bases of liability, and a probability of prevailing is shown only as to one of them, that claim stays in the case but the others are struck. Under *Oasis,* where a cause of action includes multiple bases of liability, and a probability of prevailing is shown only as to one of them, all of the claims stay in the case and none are struck. Indeed, not only does *Oasis* permit the entirety of the cause of action to go forward, it precludes consideration of the merit of any other claims in the cause of action once a probability of prevailing is demonstrated as to one of them.

Of greater concern to the matter before us, *Oasis* apparently did not involve a mixed cause of action. *Oasis* does not explicitly hold that, where a

cause of action includes both protected and unprotected activity, and none of the protected activity has any merit, the entire cause of action can still proceed merely because there is some merit to the claim based on unprotected activity.

Nonetheless, it is also true that the court in *Oasis* did not explicitly limit the application of the *Mann* rule to causes of action that were based solely on protected activity. While there might be important policy reasons for so limiting it—as we have discussed *ante*—we can find no suggestion in *Oasis* that our Supreme Court would not also approve of *Mann* in the context of a mixed cause of action, which is, of course, the very context in which *Mann* was decided.

In essence, *Oasis* embraces the view in *Mann* that, if there is any probability of prevailing on any act alleged under the heading of a "cause of action," then the cause of action is not meritless and should not be struck. In effect, section 425.16 was not intended to relieve a defendant from the burden of defending against meritless allegations of liability based on protected activity; instead, it was intended to remove a meritless cause of action from a complaint if the plaintiff happened to include in that cause of action an allegation of liability based on protected activity.

We will follow the rule pronounced by our Supreme Court. We will therefore assume that, where a cause of action arises from both protected activity and unprotected activity, the plaintiff may satisfy its obligation in the second prong by simply showing a probability of prevailing on any part of the cause of action. We now apply this rule to the matter before us.

## 2. *Wrongful Eviction*

In regard to the first cause of action for wrongful eviction, the question is whether Wallace and Owen showed, by admissible evidence, any probability that they would prevail against McCubbin or Merck on their claim for wrongful eviction. (See *HMS Capital, Inc. v. Lawyers Title Co., supra*, 118 Cal.App.4th at p. 212 [requiring admissible evidence, not merely allegations of the complaint]; *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 735 [87 Cal.Rptr.3d 347] [plaintiff cannot rely even on verified pleadings].) Wallace and Owen have failed to meet this burden.

In the first place, despite the allegations of the complaint, Wallace and Owen produced no *evidence* that McCubbin or Merck could be held responsible for the three-day notice or the unlawful detainer action. It is undisputed McCubbin and Merck did not prepare or serve the three-day notice, or file, serve or prosecute the unlawful detainer action; Victor Wu perpetrated those

acts. There is no evidence that Wu, in perpetrating these acts, was acting as an agent for McCubbin and Merck in a manner that would attribute the acts to them. There is no showing, for example, that Wu did those things to recover possession of the apartment for McCubbin or Merck; to the contrary, he did them to recover possession for himself, as landlord and property owner. Furthermore, Wallace and Owen now insist that McCubbin and Merck did not even exhort Wu to pursue the unlawful detainer; they assert in their respondents' brief that they need not prove conspiracy or aiding and abetting, and they scarcely attempt to do so.[22]

Wallace and Owen argue that McCubbin and Merck were agents of the Wus. The argument is misplaced, however, because even if that were true, and McCubbin and Merck's acts might be attributed to the Wus, there would be no basis for attributing the acts of the Wus, as principals, to McCubbin and Merck, as agents.

Furthermore, as a matter of law, Wallace and Owen have no cause of action against defendants for wrongful eviction based on the unlawful detainer action or three-day notice, in light of the litigation privilege of Civil Code section 47, subdivision (b). (*Action Apartment, supra,* 41 Cal.4th at pp. 1243–1252 [rent ordinance prohibiting landlord from maliciously serving eviction notice or bringing an action to recover possession without a reasonable and factual basis was preempted by litigation privilege of Civ. Code, § 47, subd. (b), as to unlawful detainer action, eviction notice, and other prelitigation communication relating to litigation that was contemplated in good faith—meaning not a hollow threat—and under serious consideration]; *Feldman, supra,* 160 Cal.App.4th at pp. 1486–1488 [litigation privilege applicable to unlawful detainer action and to three-day notice issued when the unlawful detainer action was contemplated in good faith, in the sense that it was seriously considered, whether or not the notice was based on facts the landlord had any basis to believe were true]; *Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1552–1553 [95 Cal.Rptr.3d 492] [cause of action for wrongful eviction under rent ordinance was barred by litigation privilege to the extent it was based on landlord's unlawful detainer action and three-day notice to quit, since the unlawful detainer was seriously contemplated when the notice was served, regardless of its merits or the landlord's motive].)

---

[22] They do argue that McCubbin and Merck assisted the Wus and the "timing and nature of appellants' and Wus' actions prove that they acted in concert and with close contact endeavoring to push Plaintiffs/Nemo out for over 2 1/2 years." But they fail to rebut McCubbin and Merck's contention that any conspiracy and aiding and abetting theory falls short as a matter of law. Their claims ultimately have no merit anyway, due to the litigation privilege and for other reasons, discussed *post*.

Based on the material submitted to the trial court, Victor Wu served the three-day notice, which was premised on the ground that Wallace and Owen wrongfully had three adults living in the premises, as a precursor to his filing the unlawful detainer action, which was premised on the same ground. While there may be evidence that Wu's motive was not pure and the lawsuit was meritless, there is no evidence that the service of the three-day notice was a hollow threat or unconnected to the unlawful detainer proceedings. The litigation privilege therefore applies to bar the cause of action. (*Action Apartment, supra,* 41 Cal.4th at pp. 1243–1252; *Feldman, supra,* 160 Cal.App.4th at pp. 1486–1488.)

Wallace and Owen fail to show any probability of prevailing on their claim against McCubbin and Merck for wrongful eviction based on the three-day notice, the unlawful detainer action, or any alleged unprotected activity.

### 3. *Retaliation*

As to their retaliation cause of action, the question is whether Wallace and Owen showed, by admissible evidence, any probability that they would prevail against McCubbin or Merck under Civil Code section 1942.5.

As to McCubbin and Merck's alleged report to Animal Control, we question whether the act is prohibited by Civil Code section 1942.5. The report did not increase Wallace and Owen's rent, decrease services, cause Wallace and Owen to vacate their unit involuntarily, or constitute an action to recover possession. Nor did the report threaten to do any of those things.

 In any event, the report to Animal Control was absolutely privileged. Reports to "public authorities whose responsibility is to investigate and remedy wrongdoing" are subject to the privilege in Civil Code section 47, subdivision (b). (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360–361 [7 Cal.Rptr.3d 803, 81 P.3d 244], italics omitted.)

 Service of a three-day notice and prosecution of an unlawful detainer action are acts that might violate Civil Code section 1942.5, which makes lessors and their agents liable for, inter alia, threatening to cause a tenant to quit involuntarily or instituting an action to recover possession in retaliation for the tenant's exercise of certain rights. As explained *ante,*

however, those acts are subject to the absolute privilege of Civil Code section 47, subdivision (b). As a matter of law, McCubbin and Merck could not be liable under Civil Code section 1942.5 on the basis of those acts.

Wallace and Owen also alleged that Victor Wu threatened to evict them because of Nemo, and they argue that this threat is not protected by the litigation privilege because no unlawful detainer action was ever filed on that ground. For McCubbin and Merck to be liable based on this threat by Victor Wu, however, Wallace and Owen would have to show that McCubbin and Merck were landlords (and Wu made the statement as their agent), or that McCubbin and Merck made the statement themselves (as agents of landlord Wu). They fail to present admissible evidence to support either proposition.

Wallace and Owen argue that they presented "more than sufficient admissible evidence to prove appellants assisted the WU Defendants in endeavoring to recover possession and retaliate after Plaintiffs asserted their rights to keep Nemo." They list dozens of acts in this regard, most of which were not performed by McCubbin and Merck. Of those that were, the acts include acts of harassment and the complaint to Animal Control, but nothing in regard to assisting the three-day notice or unlawful detainer, or anything else that would constitute increasing rent, decreasing services, causing the tenants to involuntarily quit, evicting them, or threatening to do so.

Wallace and Owen fail to establish a probability of prevailing under Civil Code section 1942.5.

## D. *Relief*

While we have focused our discussion on Wallace and Owen's assertions of liability based on the three-day notice and unlawful detainer action, we have thoroughly considered their allegations, evidence, and arguments in regard to unprotected activity as well as protected activity. Based on the showing Wallace and Owen made in the trial court, they failed to establish a probability of prevailing on their first and 13th causes of action as against McCubbin and Merck.

Because Wallace and Owen failed to establish a probability of prevailing on their claims for wrongful eviction and retaliation, the trial court

erred in denying the motion to strike. The first and 13th causes of action must be struck as to McCubbin and Merck.

## III. DISPOSITION

The order is reversed. Upon remand, the trial court shall issue a new and different order striking the first cause of action as to McCubbin and Merck and the 13th cause of action as to McCubbin and Merck. Appellants shall recover their costs on appeal.

Simons, J., concurred.

**JONES, P. J.,** Concurring.—I concur in the disposition and judgment.

I agree with the majority to the extent my colleagues hold that the first and 13th causes of action alleged in plaintiffs' complaint arise, at least in part, from protected activity and that the first prong of the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] has been satisfied. I also agree plaintiffs failed to carry their burden of demonstrating it was probable they would prevail on either cause of action and, accordingly, the trial court should have granted defendants' motion to strike.

However, I respectfully disagree with my colleagues' criticism of the rule articulated in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 [15 Cal.Rptr.3d 215] (*Mann*), and decline to join their offer of an alternative to what I view as the long-established prong-two analysis expressed by *Mann* and more recently by our Supreme Court in *Oasis West Realty v. Goldman* (2011) 51 Cal.4th 811 [124 Cal.Rptr.3d 256, 250 P.3d 1115] (*Oasis*). My colleagues posit that "the question arises whether the plaintiff can satisfy this [prong two] burden by showing it could prevail based on any of the allegations underlying the cause of action, or whether the plaintiff must show it could prevail based on the allegations of protected activity alone." (Maj. opn., *ante*, at p. 1195.) I view it as settled law that a plaintiff can satisfy his burden by showing he can prevail on any of the allegations underlying the cause of action and so I cannot join the majority's view that a plaintiff "basing liability on both protected activity and unprotected activity should have to establish a probability of prevailing as to his or her attack on the activity the statute was designed to protect—*protected* activity—nothing more than that, and nothing less." (Maj. opn., *ante*, at p. 1199.)

As is relevant here, the issue in *Mann* was how the anti-SLAPP statute should be applied to a cause of action that seeks relief based on allegations of

---

[1] All further statutory references are to the Code of Civil Procedure.

both protected and unprotected conduct. The *Mann* court resolved that issue as follows: "*The Legislature enacted section 425.16 to address problems created by meritless lawsuits brought to harass those who have exercised their First Amendment constitutional rights of free speech and petition.* [Citations.] *However, a cause of action may only be stricken under the anti-SLAPP statute if it arises from protected speech or petitioning activity and lacks even minimal merit.* [Citation.] Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff has established that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann, supra,* 120 Cal.App.4th at p. 106, italics added & omitted.)

The portion of the *Mann* decision that I have italicized captures what I believe is a critical point that should inform our interpretation of prong two of section 425.16. Section 425.16 was enacted to address the problem of *SLAPP* suits, i.e., suits that are designed to prevent citizens from exercising their political rights or to punish those who have done so. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 645 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The legislative history of the section makes this clear (see, e.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.) Feb. 25, 1992, pp. 3–5), and as far as I can determine, every published case that has analyzed section 425.16 has described it as an anti-SLAPP statute. (See, e.g., *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 130 [110 Cal.Rptr.3d 159].) But one of the defining characteristics of a SLAPP suit is its lack of merit. As one of the early cases interpreting section 425.16 explained, "SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citations.] Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. [Citation.] But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. [Citation.] As long as the defendant is forced to devote its time, energy and financial

resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. [Citations.] . . ." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 816 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 68, fn. 5.)

When the Legislature enacted section 425.16, it sharpened its focus somewhat by applying the statute not just to SLAPP suits, but to *causes of action* that can be characterized as SLAPP's. This is demonstrated by the wording of the statute itself: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." (§ 425.16, subd. (b)(1).) But in my view, whether the challenge is to a SLAPP suit or a SLAPP cause of action, the essential characteristic of a SLAPP remains the same: it is meritless.

The *Mann* court relied on this fact when determining how the anti-SLAPP statute should be applied to a cause of action that includes allegations of both protected and unprotected conduct. The court noted that section 425.16 was "enacted . . . to address problems created by meritless lawsuits" and that a cause of action may be stricken under the anti-SLAPP statute only if it "lacks even minimal merit." (*Mann, supra*, 120 Cal.App.4th at p. 106.) Therefore, the court reasoned that when "a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure." (*Ibid.*)

The *Mann* court's analysis of this issue has been followed by other courts and has been the unchallenged law of this state for several years. (See, e.g., *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124–1125 [41 Cal.Rptr.3d 1]; *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 786 [83 Cal.Rptr.3d 95].) Critically, and as the majority concedes, the *Mann* court's analysis of this issue has now been adopted by our Supreme Court. (See *Oasis, supra*, 51 Cal.4th at p. 820.)

The majority correctly summarizes the procedural background of *Oasis* but questions the applicability of the decision to a mixed cause of action, because "*Oasis* apparently did not involve a mixed cause of action." (Maj. opn., *ante*, at p. 1211.) Nevertheless, because the majority finds "no suggestion in *Oasis* that our Supreme Court would not also approve of *Mann* in the context of a mixed cause of action," it appropriately "follow[s] the rule pronounced by our Supreme Court." (Maj. opn., *ante*, at p. 1212.) In my view, the premise for the majority's concern is flawed. While the majority states that

"*Oasis* apparently did not involve a mixed cause of action" our Supreme Court did not reach that conclusion. The *Oasis* court declined to conduct a first-prong anti-SLAPP statute analysis and therefore we have no way of knowing whether any of the causes of action at issue in that case could be characterized as mixed.

The majority also questions whether the adoption of the *Mann* rule in *Oasis* is consistent with the Supreme Court's decision in *Taus v. Loftus* (2007) 40 Cal.4th 683 [54 Cal.Rptr.3d 775, 151 P.3d 1185] (*Taus*). (Maj. opn., *ante*, at pp. 1208–1210.) In *Taus*, the plaintiff sued the defendants for investigating, publishing and publically discussing her background and private life without her consent. (*Taus*, at p. 689.) The defendants filed a motion to strike under the anti-SLAPP statute and the trial court granted the motion as to some of the causes of action that had been alleged but not others. (*Id.* at p. 702.) The defendants appealed, and the Court of Appeal evaluated the individual factual claims contained within the causes of action that were at issue and ruled that the lawsuit could go forward based on four of those claims. (*Id.* at p. 711.) Only the defendants filed a petition for review; therefore, the issue before our Supreme Court was quite narrow: "whether the Court of Appeal properly concluded that dismissal under the anti-SLAPP statute was improper with regard to . . . four incidents or conduct allegedly engaged in by one or more of the defendants." (*Ibid.*) Our Supreme Court evaluated those four incidents at length and ruled the anti-SLAPP motion should have been granted as to three of them, but that the action could proceed as to one of them. (*Id.* at p. 742.) *Taus* never analyzed the propriety of striking some, but not all, alleged wrongful acts supporting a cause of action.

The majority "would think that *Taus* would be the death knell for the rule ventured . . . in *Mann*" because "[i]n evaluating the probability of prevailing on assertions of liability based on protected activity, the court in *Taus* looked at whether *those* assertions—not any others in the purported cause of action or count—had any merit." (Maj. opn., *ante*, at p. 1210.) In my view, it is apparent why the Supreme Court looked only at the four grounds of liability that had been asserted and not any others. That was the only issue before the court. The narrow focus of *Taus* and the court's narrow ruling was simply a product of the procedural posture of the case.

Additionally, as I noted recently, "the SLAPP statute has been litigated heavily since its enactment in 1992 (Stats. 1992, ch. 726, § 2, p. 3523), and the Legislature has not hesitated to amend the statute when it believed courts were interpreting it incorrectly. (See, e.g., Stats. 2005, ch. 535, § 3, p. 4123 ['It is the intent of the Legislature, in amending subdivision (f) of Section 425.16 of the Code of Civil Procedure, to overrule the decisions in *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1387–1390 [129 Cal.Rptr.2d 892], and *Fair*

*Political Practices Commission v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1174–1178 [18 Cal.Rptr.3d 157].'].) Furthermore, because the Legislature has amended section 425.16, *twice* since *Mann* was decided (see Stats. 2005, ch. 535, § 1, p. 4120; Stats. 2009, ch. 65, § 1), the doctrine of legislative acquiescence has application. (See *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 816 [11 Cal.Rptr.3d 298, 86 P.3d 354].)" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554–1555 [110 Cal.Rptr.3d 129].)

Under these circumstances, I see no reason to criticize an analysis that is consistent with the statute's goal as expressed in its legislative history, is a reasonable vehicle to promptly and efficiently identify and dismiss unmeritorious lawsuits or causes of action, has been approved by our Supreme Court, and has withstood the test of time.

Because the majority reaches a different conclusion, I must respectfully concur only in the result.

A petition for a rehearing was denied on July 26, 2011, the opinion was modified to read as printed above. Jones, P. J., was of the opinion that the rehearing should be granted. Respondents' petition for review by the Supreme Court was denied October 26, 2011, S195503. Kennard, J., was of the opinion that the petition should be granted.