Filed 2/11/14  Diabetes Research Restitution v. Katz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DIABETES RESEARCH RESTITUTION, LLC,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RONALD KATZ et al.,<br><br>　　　Defendants and Appellants. | D062586<br><br><br>(Super. Ct. No.<br>　37-2012-00090260-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Steven R. Denton, Judge.  Affirmed.

Wachtel Masyr & Missry, Elliot Silverman for Defendants and Appellants SMR Trust III, Katz, Wachtel, EuroAmerican Investment Corporation, Knobel, Knobel Children's Trust and Levine.

Sandler, Lasry, Laube, Byer & Valdez, Jeffrey M. Byer; Baker Donelson Bearman Caldwell & Berkowitz and William Edward Routt for Defendants and Apellants First Tennessee Brokerage, Inc. and McConkey.

Keker & Van Nest, Susan J. Harriman for Defendant and Appellant Hagenbuch.

Klinedinst, PC, Robert Joseph Hatem, G. Dale Britton, and Gregory A. Garbacz for Defendants and Appellants Anderson, Hoffman, Conn and Frankel.

Edleson & Rezzo, L.B. Chip Edleson and Joan Rezzo; Reynolds APC, Paul Anthony Reynolds for Plaintiff and Respondent.

## I.

## INTRODUCTION

After acquiring the litigation claims of a former biotech company called MicroIslet, Inc. (MicroIslet), Diabetes Research Restitution, LLC (DRR) brought this action against several individuals who were formerly associated with MicroIslet. In its complaint, DRR brought a claim for breach of fiduciary duty against a group of former MicroIslet directors and officers and a claim for aiding and abetting breach of fiduciary duty against a number of the company's former creditors and brokers. Both claims were based on allegations that defendants pursued a scheme to acquire MicroIslet by providing debt financing to the company on unfavorable terms, intending that the debt financing would subsequently go into default and be converted to equity interests. DRR claimed that the alleged scheme "caused MicroIslet's collapse and bankruptcy" and that, as a result of defendant's conduct, MicroIslet "lost all value and assets."

2

Appellants filed a special motion to strike[1] pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16)[2] in which they contended that DRR's claims arose from MicroIslet's filing of a petition for bankruptcy—an activity that is protected by the anti-SLAPP statute. DRR opposed the motion on several grounds, including that its claims did not arise from MicroIslet's filing of a bankruptcy petition, but rather, from defendants' "layering [of MicroIslet's] balance sheet with toxic insider debt . . . in an ill-fated attempt to take over the company . . . ." DRR further contended that references in the complaint to MicroIslet's bankruptcy were merely incidental to, and not the gravamen of, DRR's claims.

The trial court denied the motion on the ground that DRR's claims did not arise from MicroIslet's filing a bankruptcy petition, but rather, from appellants' alleged implementation of a scheme to provide unfavorable debt to MicroIslet in an attempt to take over the company.

On appeal, appellants claim that the trial court erred in denying their special motion to strike. We conclude that DRR's claims did not arise from the filing of the

---

[1] Appellants are Ronald Katz, Keith B. Hoffman, Robert W. Anderson, Steven Frankel, William Wacthel, EuroAmerican Investment Corporation (EuroAmerican), SMR Trust III, Peter Knobel, Knobel Children's Trust, Harold Levine, John Hagenbuch, Brian Conn, Philip McConkey, and First Tennessee Brokerage, Inc.

The complaint also named Michael J. Andrews and Barry Ritholtz as defendants, both of whom were alleged to be former directors of MicroIslet. Andrews and Ritholtz did not join in the special motion to strike and, consequently, they are also not parties to this appeal.

[2] "SLAPP" stands for Strategic Lawsuit Against Public Participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

3

bankruptcy petition nor from acts taken in connection with that filing, and that appellants failed to carry their burden of establishing that DRR's claims arose from activity that is protected under the anti-SLAPP statute. Accordingly, we affirm the trial court's order.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The parties and the complaint*

MicroIslet was a publicly traded corporation whose focus was on developing a treatment for Type 1 diabetes. In late 2008, MicroIslet filed a bankruptcy petition seeking reorganization (11 U.S.C. § 1101 et seq.). The company later converted the petition to one seeking liquidation (11 U.S.C. § 701 et seq.). DRR's predecessors, Bankruptcy Acquisition Company and Bankruptcy Acquisition Partners, purchased MicroIslet's litigation claims during an auction of the company's assets conducted in the bankruptcy proceedings, and assigned the claims to DRR.

In January 2012, DRR filed a complaint in which it alleged a cause of action for breach of fiduciary duty against a group of former directors and officers of MicroIslet (the "director/officer defendants"),[3] and a cause of action for aiding and abetting breach of fiduciary duty against a group of individuals who had either loaned money to

---

[3] The director/officer defendants are Katz, Andrews, Hoffman, Anderson, Frankel, Ritholtz, and Conn.

MicroIslet ("creditor defendants") or had assisted the company in raising funds ("broker defendants") (collectively the "creditor/broker defendants").[4]

In its breach of fiduciary duty cause of action, DRR alleged that after it became apparent that MicroIslet was on the "verge of becoming immensely valuable," the creditor defendants[5] "developed and pursued a scheme to steal the business by saddling it with expensive debt that could not or would not be repaid and that they could then convert to ownership." According to DRR, the director/officer defendants eschewed available equity funding for the company, and instead "arranged to make loans themselves or through friends and related parties to provide financing to the [c]ompany on terms unfavorable and unfair to the business, all designed to cause the debt to go unpaid so that the [d]efendants would take over most or all of the ownership of the business from existing shareholders."

More specifically, DRR alleged that since MicroIslet's founding in 1998 and through 2006, MicroIslet had been funded with equity contributions and research grants, rather than with debt. By early 2006, according to DRR, MicroIslet's public equity market value exceeded $120 million. DRR further alleged that beginning in 2007, the

4       The creditor/broker defendants are Katz, Wachtel, EuroAmerican, SMR Trust III, Peter Knobel, Knobel Children's Trust, Levine, Hagenbuch, McConkey, and First Tennessee Brokerage. Katz is a member of both the director/officer defendants and the creditor/broker defendants.
        Although the complaint named *all* defendants in the aiding and abetting cause of action, DRR withdrew its claim as to the director/officer defendants in its opposition to the special motion to strike.

5       Many allegations of the complaint are unclear as to whether they refer to all defendants or to particular subgroups of defendants.

creditor defendants or their affiliates[6] made loans to MicroIslet totaling approximately $7 million. DRR claimed that the loans were made pursuant to notes that contained "onerous terms," including "a short maturity date after which the note[s] would be in default and interest would increase to twenty-four percent." DRR also claimed that the director/officer defendants falsely represented that many of these loans were made by independent third parties rather than by corporate insiders.

DRR maintained that the director/officer defendants "concealed their plan and intentions," "fired or removed employees, officers and directors who questioned the illegitimacy [*sic*] of their debt financing," and "actively misled shareholders and potential investors to prevent further funding of the business in a manner that would undercut the scheme." DRR also alleged that during the period in which the director/officer defendants were "turning down offers of favorable financing," they were "pretend[ing] to use the services of a broker [McConkey] to seek financing in order to further cover up their scheme to take over ownership of MicroIslet by unnecessarily saddling the business with toxic debt."

According to DRR, the loans made by the creditor defendants and their affiliates were "part of a plan by the [creditor] [d]efendants to dilute [*sic*] the debt they created into new equity ownership." DRR alleged that the creditor defendants formalized their scheme to convert their debt into ownership through a secret written plan called the " 'Debt Harmonization Agreement,' " pursuant to which the creditor defendants planned

---

6      DRR alleged that Hagenbuch, Katz, SMR Trust III, Levine, Knobel, Knobel Children's Trust, and EuroAmerican made loans to MicroIslet.

to " 'harmonize' " various debt instruments into new convertible preferred shares, which would, in turn, be converted to common stock. DRR alleged that this maneuver would have had the effect of diluting the ownership interests of the existing shareholders and permitting the creditor defendants to own approximately 92 percent of the company.[7] DRR claimed that the creditor defendants signed the Debt Harmonization Agreement on September 21, 2008. According to DRR, shortly after the Debt Harmonization Agreement was executed, many defendants "dumped their shares of MicroIslet common stock into the market."

The complaint also contained several allegations related to MicroIslet's bankruptcy.[8] For example, DRR stated that in October 2008, MicroIslet's directors voted to put the company into Chapter 11 (reorganization) bankruptcy and that shortly thereafter, MicroIslet filed a Chapter 11 petition for bankruptcy.[9] DRR also claimed that the director/officer defendants "took steps to push through bankruptcy as quickly as possible so they could propose a Plan of Reorganization in which the creditor [d]efendants would receive approximately 92% of the common stock of the company."

---

[7]     In their opposition to appellant's motion to strike, DRR presented evidence that the creditor defendants and their affiliates owned approximately 14 percent of MicroIslet as of August 2012.

[8]     DRR alleged, "The plan adopted by [d]efendants expressly anticipated filing for bankruptcy reorganization as a potential course of action to achieve their planned takeover and to protect the [d]efendants from shareholder claims against them."

[9]     The complaint incorrectly states that, in *2009,* MicroIslet's board of directors voted to put the company into bankruptcy and filed a bankruptcy petition, but it is clear from the record that these events occurred in *2008.*

DRR further alleged that the director/officer defendants undervalued the company's assets in the bankruptcy petition, and falsely certified that EuroAmerican was not an interested party in the bankruptcy proceedings.

DRR claimed that MicroIslet's core shareholders formed an Ad Hoc Committee of Shareholders (Committee) in the bankruptcy proceedings and successfully challenged MicroIslet's undervaluing of assets.  In addition, DRR alleged that the Bankruptcy Court granted the Committee permission to conduct an investigation into the relationship and identities of MicroIslet's creditors, through which defendants' wrongdoing was discovered.  DRR further claimed that in February 2009, "after [being] caught by the Committee in their scheme to steal the business," the director/officer defendants voted to convert the bankruptcy reorganization to a liquidation.  DRR noted that MicroIslet's assets have since been liquidated.

Finally, DRR claimed that "while the [d]efendants' scheme failed, it caused MicroIslet's collapse and bankruptcy" and that "[a]s a direct result of the [d]efendants' wrongful conduct, MicroIslet lost all value and assets and was deprived of substantial future value and profits."

In its aiding and abetting claim, DRR incorporated the allegations of its breach of fiduciary duty cause of action and further claimed that the creditor/broker defendants "knowingly conspired to implement the scheme described above so as to steal the business of MicroIslet just before it realized its immense value."

8

B.      *The special motion to strike*

In April 2012, appellants filed a special motion to strike.  In their supporting brief, appellants argued that both of DRR's claims arose from appellants' "constitutionally and statutorily protected activity of petitioning the U.S. Bankruptcy Court."  Appellants maintained that DRR had alleged in its complaint that the director/officer defendants breached their fiduciary duties to the company by participating in a scheme to enable the creditor defendants to " 'steal' " the business by " 'saddling' " MicroIslet with debt on unfavorable terms that could later be converted to ownership interests in the company.  Appellants noted that, according to DRR, this scheme " 'expressly anticipated filing for bankruptcy reorganization.' "  Appellants argued that the bankruptcy filing was "hardly 'incidental' to [DRR's] [c]omplaint; [rather] it forms the very essence of its claims."  In support of this contention, appellants maintained that allegations relating to the bankruptcy petition constituted the sole basis for DRR's claimed injuries.[10]

C.      *The opposition*

DRR filed an opposition in which it argued that appellants had failed to demonstrate that DRR's claims arose from appellants' petitioning activity, for two independent reasons.  First, DRR argued that any petitioning activity referred to in the complaint was done on behalf of *MicroIslet*, and not appellants.  Second, DRR argued that its claims did not arise from the only protected activity referenced in the complaint,

---

[10]     Appellants also argued that DRR would be unable to establish a probability of prevailing on its claims, and lodged several declarations in support of this contention.

9

MicroIslet's bankruptcy filing. Instead, DRR maintained, references in the complaint to the bankruptcy filing were merely incidental to DRRs claims. DRR explained:

> "[T]he principal thrust or gravamen of DRR's claims arise out of the layering of MicroIslet's balance sheet with toxic insider debt even though more favorable equity financing options were available in an ill-fated attempt to take over the company—actions that harmed the company and its balance sheet and capital structure as soon as the debt was placed in lieu of equity. It is *that* activity—not ultimately directing MicroIslet to file bankruptcy—that was the essence of defendants' wrongdoing."[11]

D.      *The reply*

Appellants filed a reply in which they noted that DRR had conceded in its opposition that MicroIslet's bankruptcy filing constituted activity that is protected by the anti-SLAPP statute. Appellants reiterated their argument that DRR's two causes of action "stem solely from the bankruptcy filing," contending that "the loss of MicroIslet's assets in bankruptcy constitutes the *only* cognizable damages that DRR has alleged." Appellants argued that for this reason, the bankruptcy filing was "indispensable," rather than "incidental," to DRR's claims.[12]

---

[11]    DRR argued, in the alternative, that appellants' special motion to strike should be denied because DRR had established a probability of prevailing on its claims. DRR lodged several declarations in support of this contention.

[12]    Appellants also maintained that DRR was incorrect in arguing that *MicroIslet's* bankruptcy filing did not constitute protected activity by *appellants* because "courts recognize that anti-SLAPP protection extends to acts undertaken in support of another person's protected activity." In addition, appellants contended that DRR had failed to demonstrate a probability of prevailing of its claims.

E.      *The trial court's ruling*

The trial court issued a tentative ruling denying the special motion to strike on the ground that appellants had failed to demonstrate that either of DRR's claims arose from protected activity. After outlining the applicable law, the court reasoned:

> "[DRR's] claims are for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty. [DRR] has alleged [d]efendants engaged in a scheme to load MicroIslet with unnecessary amounts of debt in order to drive the company into bankruptcy so that [d]efendants would be able to purchase the company at a discounted rate, thereby transforming the debt into a controlling percentage of equity. . . . It is the entire scheme to saddle the company with debt that is the gravamen, or principal thrust or predominant nature, of [DRR's] claims. This action would have resulted regardless of any bankruptcy filing."

After oral argument, the trial court confirmed its tentative ruling and issued a final order supplementing the confirmed tentative ruling. In its final order, the court quoted several portions of the complaint, including an allegation that defendants " 'deliberately set[] up circumstances so that MicroIslet would fail and so that the [c]ompany would be forced into a reorganization to the detriment of MicroIslet.' " After quoting this portion of the complaint, the trial court stated:

> "Bankruptcy is not the only form of reorganization a company can undergo. Indeed, [DRR] also alleges an alternative reorganization plan [d]efendants created, called the 'Debt Harmonization Agreement.' [Citation.] While bankruptcy was the ultimate result, the gravamen of [DRR's] causes of action is the scheme to load the company with unfavorable, short-term debt in order to necessitate a reorganization through which [d]efendants would gain a controlling interest in MicroIslet. Defendants' mere contemplation of bankruptcy as a potential result of their actions does not convert their conduct into protected petitioning activity."

11

F.      *The appeal*

Appellants timely appealed the trial court's order denying their special motion to strike.

III.

DISCUSSION

*The trial court properly denied appellants' special motion to strike*

Appellants contend that the trial court erred in denying their special motion to strike.

A.      *Governing law*

1.      *The anti-SLAPP statute*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e) provides in relevant part:

> "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

12

2. *The two-step process for resolving an anti-SLAPP motion*

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one *arising from* protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733, italics added.)

On appeal, this court " 'review[s] an order granting an anti-SLAPP motion de novo . . . .' " (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1536.)

3. *The "arising from" requirement*

In determining whether a cause of action arises from protected activity, a court must "disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] [A court] assess[es] the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is

13

premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*).)

In *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, the court summarized the law to be applied in analyzing a claim that contains allegations pertaining to acts that are protected under the anti-SLAPP statute as well as nonprotected acts:

> "When a [complaint] presents a mixed cause of action that involves protected and nonprotected activities . . . the question presented is 'whether the gravamen of the cause of action targets protected activity. [Citation.] If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. [Citations.]' Stated differently, the question is whether the protected activity is merely an incidental part of the cause of action. [Citation.]" (*Id*. at p. 767.)

"[A]n alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183 (*Wallace*).) However, allegations concerning acts that "could each be the sole and adequate basis for liability under the cause of action" are *not* incidental to the cause of action. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551 (*Haight Ashbury*).) In determining whether allegations pertaining to protected activity are incidental to a cause of action, courts have often considered whether such allegations constitute a *substantial* and/or *significant* part of the factual allegations underlying a claim. (See, e.g., *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply,*

14

*Inc.* (2006) 137 Cal.App.4th 1118, 1125 (*A.F. Brown Electrical Contractor, Inc.*) [a "cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a *substantial part* of the factual basis for the claim" (italics added)]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1288 ["allegations of protected conduct in the original intentional interference claim were not merely incidental to the allegations of unprotected conduct. They represent the *bulk of* the allegations underlying the cause of action" (italics added)]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675 ["Because we conclude both of plaintiffs' claims are based in *significant part* on Sheppard's protected petitioning activity in the SEC litigation, the burden shifts to plaintiffs under section 425.16 to make a prima facie showing their claims have merit" (italics added)].)

B.    *DRR's causes of action do not arise from activity protected under the anti-SLAPP law*

It is clear from the allegations of the complaint that the principal thrust or gravamen of DRR's causes of action is that appellants engaged in a scheme to enable the creditor defendants to take over MicroIslet by "saddling" it with unfavorable insider debt even though more favorable equity financing options were available to the company.  It is appellants' alleged acts in connection with MicroIslet's debt financing that form the basis of DRR's claims for breach of fiduciary and aiding and abetting breach of fiduciary duty. For example, DRR alleged that the creditor defendants provided loans to MicroIslet with onerous terms that were approved by the director/officer defendants, the director/officer defendants eschewed more attractive and available equity financing, and the

15

director/officer defendants engaged in acts designed to conceal their misdeeds. DRR alleged that this conduct caused MicroIslet to lose all of its value and assets.

While DRR's complaint referred to acts taken in relation to MicroIslet's bankruptcy filing—acts that are undisputedly protected by the anti-SLAPP law (§ 425.16, subd. (e)(1), (2))—the fact that a cause of action refers to protected activity does not, by itself, subject the cause of action to a special motion to strike. (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729 ["the fact plaintiffs' claims are related to or associated with Schack's litigation activities is not enough" to subject such claims to the anti-SLAPP law]; *Hylton, supra*, 177 Cal.App.4th at p. 1272 [concluding that breach of fiduciary claim did not arise under anti-SLAPP law because, "[a]lthough petitioning activity is part of the evidentiary landscape within which [plaintiff's] claims arose, the gravamen of [plaintiff's] claims is that [defendant] engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to [plaintiff]"].) In its complaint, DRR neither sought to impose liability on appellants for acts related to the bankruptcy proceeding (see *Wallace, supra,* 196 Cal.App.4th at p. 1183), nor did it present allegations related to the bankruptcy filing as the "sole and adequate basis for liability." (*Haight Ashbury*, *supra*, 184 Cal.App.4th at p. 1551.) Further, DRR's allegations pertaining to MicroIslet's bankruptcy do not form a "substantial part" of the factual basis of its causes of action. (*A.F. Brown Electrical Contractor, Inc., supra,* 137 Cal.App.4th at p. 1125.)

Instead, as discussed above, DRR's breach of fiduciary and aiding and abetting causes of action are based on appellants' unprotected acts related to MicroIslet's insider

16

debt financing and the alleged scheme to take over ownership of the company. Under these circumstances, the bankruptcy allegations are merely incidental to DRR's causes of action, and do not form the gravamen of its claims. (See *Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1161 [breach of fiduciary cause of action that contained allegation that defendants engaged in protected activity of filing lawsuit against hospital did not arise from protected activity because that allegation merely constituted evidence of defendants' wrongful unprotected activity of terminating negotiations with hospital]; *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273 [concluding cause of action for breach of fiduciary duty and related claims did not arise from protected activity of hiring attorneys and filing a lawsuit because ["[plaintiff's] allegations relating to the hiring of attorneys and filing a lawsuit . . . do not constitute the 'overall thrust' of the complaint, which relates to mismanagement and misuse of corporate funds"].)

We are not persuaded by appellants' argument that "[t]he [c]omplaint . . . alleges that DRR . . . was damaged *solely* by MicroIslet's *bankruptcy*." (Second italics added.) The complaint broadly alleges, "As a direct result of the [d]efendants' wrongful *conduct*, MicroIslet lost all value and assets and was deprived of substantial future value and profits." (Italics added.) Nothing in this allegation limits DRR's claimed damages to those flowing from MicroIslet's filing of a bankruptcy petition.

We also reject appellants' contention that DRR's allegation that defendants engaged in a scheme that involved making onerous loans to MicroIslet could not give rise to liability because, according to appellants, "the loans were never repaid" and a breach of fiduciary duty claim may not be brought based on alleged harm to a company's "capital

17

structure and balance sheet." These are arguments that go to the *merits* of DRR's claims, and are irrelevant in assessing whether DRR's claims arise from protected activity. (See, e.g., *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis"].)

Accordingly, we reject appellants' contention that "the loss of MicroIslet's assets in bankruptcy constitutes the *only* cognizable damages that [DRR] has alleged" and that DRR would be unable to state a cause of action *but for* the bankruptcy allegations. (Compare with *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90.) [concluding claim arose from protected activity because "*but for* the federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis"]; *Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 598 [concluding breach of fiduciary claim against attorney arose from attorney's protected act of filing trademark application because "*[b]ut for* the trademark application, [plaintiff] would have no reason to sue [defendant]" (italics added)].)

We conclude the trial court properly determined that DRR's claims do not arise from activity protected under the anti-SLAPP law.[13]

---

13    In light of our conclusion, we need not consider DRR's contention that none of appellants engaged in any protected activity because the "bankruptcy petition was filed by, and for the benefit of, *MicroIslet*," rather than appellants. (Italics added.) We also need not consider DRR's contention that we may affirm the order on the alternative ground that DRR established a probability of prevailing on its claims and we express no opinion concerning whether DRR will ultimately prevail on the merits of its claims.

IV.

DISPOSITION

The trial court's order denying the special motion to strike is affirmed.  DRR is entitled to recover costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

19